Estate of Lawrence Harrison, Deceased, Martin Kingsley, Executor, v. Commissioner.
Estate of Lawrence Harrison v. Commissioner
Docket No. 33118.
United States Tax Court
1953 Tax Ct. Memo LEXIS 351; 12 T.C.M. (CCH) 196; T.C.M. (RIA) 53069; February 27, 1953
*351 The Commissioner in his determination of a deficiency against petitioner's decedent stated: Information on file in this office discloses that the following items of taxable income were not reported: (1) Commission of "kick back" received from Prosperity
Co., Inc.
$20,000.00
(2) Salary "kick back" received from Walter E. Bell
5,000.00 Held, the determination of the Commissioner is presumed to be correct and petitioner has not sustained its burden of proof to show respondent's determination is in error. Respondent's determination is sustained for lack of evidence to overcome it. 2. The decedent realized a $5,000 loss when he sold a $23,000 claim for $18,000 in 1944, and the controversy here is the kind of deduction. Held, that the loss realized is a capital loss subject to the limitations of section 117, I.R.C.
3. Respondent determined decedent realized additional income of $5,184 due to unexplained bank deposits in 1944. Held, that of the $5,184 which the respondent determined to be taxable income, petitioner has proved that $3,600 represented loans which had been deposited to decedent's bank account and did not represent income. The *352 Commissioner is sustained as to the remaining $1,584 for lack of sufficient evidence to show it was in error. 4. The Commissioner imposed a fraud penalty of 50 per cent on the deficiency for the year 1943, under section 293(b), I.R.C. The determination of fraud and the imposition of a fraud penalty by respondent place upon him the burden of proving fraud by clear and convincing evidence. Held, the respondent has not sustained his burden of proof in establishing fraud and his imposition of a 50 per cent fraud penalty is not sustained. Martin Kingsley, *353 Esq., for the petitioner. Robert Margolis, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner had a deficiency in petitioner's income tax for the year 1943, of $26,633.21 and a fraud penalty of $13,316.61. The deficiencies are based upon adjustments for the years 1942 and 1943. The year 1942 is involved because of the Current Tax Payment Act of 1943. The main adjustments are for 1943 and are as follows: (a) Deductible Expenses Disallowed
$ 7,072.31
(b) Bad Debt Disallowed
7,000.00
(c) Additional Income
25,000.00 These adjustments were explained in the deficiency notice as follows: "(a) There were claimed deductible trade or business expenses of $10,090.99, whereas the amount found to be allowable is $3,018.68. Accordingly, the difference of $7,072.31 has been disallowed. "(b) The claimed bad debt deduction in the amount of $7,000.00 representing a loss resulting from the alleged worthlessness of advances made to Technical Castings & Manufacturing Co., Inc. has been disallowed inasmuch as it has not been established that the advances became worthless within the taxable year. "(c) Information on file in *354 this office discloses that the following items of taxable income were not reported: "(1) Commission of 'kick back' received from Prosperity Co., Inc. $20,000.00 "(2) Salary 'kick back' received from Walter E. Bell $5,000.00." The Commissioner determined 50 per cent fraud penalty on the deficiency for the year 1943 under section 293(b), I.R.C.
To the adjustments made by the Commissioner to the net income reported by the petitioner on his 1942 and 1943 returns, the following errors are assigned in the petition: "(a) Respondent erred in determining that $4,253.87 paid to the decedent during 1942, by his employer, EDLUND MACHINERY CO., INC., as a reimbursement for travel and entertainment expenses, was a constructive dividend. "(b) Respondent erred in not allowing as a business loss deduction for the year 1942, the sum of $30,000.00 advanced by the decedent to JAMES HORSFALL in connection with the promotion of a Mora timber concession and operation in Trinidad, British West Indies. "(c) Respondent erred in not allowing as a business bad debt deduction or in the alternative as a business loss deduction in 1943, the sum of $7,000.00 representing sums *355 advanced by the decedent to THE TECHNICAL CASTING AND MANUFACTURING CO. (a corporation of Akron, Ohio). "(d) Respondent erred in not allowing as a business expense deduction of the decedent for the year 1943 the sum of $4,200.00 paid to Mr. WILLIAM WARFIELD, for necessary services rendered to the decedent, as a consulting engineer, and for expenses, in accordance with a written contract entered into between WILLIAM WARFIELD and the decedent, dated April 14, 1943, and accepted by WILLIAM WARFIELD on April 19, 1943. "(e) Respondent erred in including as taxable income of the decedent for the year 1943, alleged commission or payment back to the decedent of $20,000.00 from PROSPERITY CO. INC., a New York Corporation. "(f) Respondent erred in including as taxable income of the decedent for the year 1943, the sum of $5,000.00, alleged to have been received by the decedent as payment back of salary from WALTER E. BELL, the executive Vice-President of the said EDLUND MACHINERY CO., INC. "(g) Respondent erred in not allowing as a deduction in determining the net taxable income of the decedent for the years 1942 and 1943, a Net Operating Loss Carry-back of the decedent from the year *356 1944 of $47,274.13, and a Net Operating Loss Carry-back from the year 1945 of $30,312.37. "(h) Respondent erred in determining a penalty of $13,316.61." Some of the issues have been settled in the stipulation which the parties filed at the hearing. Some of them petitioner no longer urges in his brief. The Commissioner in his brief states that the following issues raised by the pleadings remain to be decided: "1. Whether, during the taxable year 1944, a $5,000 loss incurred by Lawrence Harrison on his loans and accounts receivable from Trenton Technical Laboratories, Inc. is subject to the capital loss limitations of section 117 of the Internal Revenue Code. "2. Whether Lawrence Harrison failed to include in taxable income for the taxable year 1944 bank deposits of $5,184.00. "3. Whether Lawrence Harrison failed to include in taxable income, for the taxable year 1943, $5,000 received as a salary kick-back from Walter E. Bell. "4. Whether Lawrence Harrison failed to include in taxable income, for the taxable year 1943, $20,000 for services rendered to Prosperity Company, Inc. "5. Whether any part of the deficiency asserted against Lawrence Harrison *357 for the taxable year 1943 is due to fraud with intent to evade taxes within the meaning of section 293(b) of the Internal Revenue Code so that the 50 percent addition is applicable." So far as we can see from reading the pleadings and briefs of the respective parties, the above statement of the Commissioner as to the issues which remain for us to decide is correct. The Commissioner in his brief states that the following issues are conceded by him: "1. It is admitted that Lawrence Harrison is entitled to an ordinary loss of $30,000 in the taxable year 1942 on advances made to James Horsfall. "2. It is admitted that Lawrence Harrison is entitled to an ordinary loss of $7,000 in the taxable year 1943 on advances made to Trenton Technical Castings Manufacturing Company. "3. It is admitted that Lawrence Harrison is entitled to a deduction of $3,050 in the taxable year 1943 on payments made to Mr. William Warfield. "4. It is admitted that Lawrence Harrison is entitled to a deduction of $1,000 in the taxable year 1944 on payments made to Mr. William Warfield." Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner *358 Martin Kingsley is the duly appointed, qualified, and acting executor of the last will and testament of Lawrence Harrison, the decedent who died on June 27, 1949, a resident of the State of New York. Decedent filed his income tax returns for the years in question with the collector of internal revenue for the third district of New York. In 1942, decedent purchased all the outstanding stock of Edlund Machinery Company, Inc., of Cortland, New York, hereinafter called Edlund. Decedent was the president, director, and chief operating officer of Edlund during 1942 and 1943. The decedent acted as an adviser during this time to the Smaller War Plants Division in the War Production Board, a Federal Government Agency, to mobilize small business for the war effort. Edlund was engaged in the manufacture of drill presses for the United States Air Force during the years 1942 and 1943. On November 28, 1942, Edlund entered into a subcontract with The Prosperity Company, hereinafter called Prosperity, whereby Prosperity was to manufacture these drill presses. This agreement was amended by a subsequent contract dated January 29, 1943. During the year 1943, as the drill presses were completed by *359 Prosperity and shipped to Edlund, the latter paid Prosperity by check. Prosperity, during the year 1943 and for many years prior thereto, was engaged in the manufacture of commercial laundry and dry cleaning machinery. During 1943 and 1944, the corporation employed approximately 525 employees and had a gross volume of business in excess of three million dollars yearly. Aquila R. Braun was president and Albert R. Predmore was auditor or comptroller of Prosperity during the period involved, both men having been associated with Prosperity for a period in excess of 20 years. In the course of manufacturing these drill presses for Edlund, Prosperity experienced difficulty in the procurement of certain castings and materials necessary for the completion of the presses. The Commissioner in his determination of the deficiency has made the following determination: "(c) Information on file in this office discloses that the following items of taxable income were not reported: (1) Commission of 'kick
back' received from Pros-
perity Co., Inc.
$20.000.00
(2) Salary 'kick back' re-
ceived from Walter E.
Bell
5,000.00" Petitioner offered some evidence against this determination *360 of the Commissioner and the Commissioner offered some evidence in support of it. After a consideration of all the evidence we conclude that petitioner has not overcome the presumptive correctness of respondent's action in adding these two items of income to the income reported on decedent's return for 1943. The decedent during his lifetime was an engineer, industrial consultant, and active company promoter. As a promoter, he was associated actively with numerous corporations in the United States. Decedent was a stockholder, director, and officer of Trenton Technical Laboratories, Inc., hereinafter called Trenton, in 1943 and 1944. Trenton was indebted to the decedent in the total amount of $23,000. Decedent was financially overextended, but Trenton was not in a position to repay the loan. However, Trenton was not insolvent, and it was not shown that the debt was worthless in whole or in part. By an agreement dated May 25, 1944, decedent transferred this claim of $23,000 to John F. Fisher for $18,000, together with an option to purchase stock. Petitioner realized a $5,000 loss thereby. Decedent's indebtedness against Trenton was a capital asset, and the loss realized was a capital *361 loss. Respondent added $5,184 of unexplained bank deposits to Lawrence Harrison's income for the taxable year 1944. Of this amount, it has been stipulated that a check for $2,300 dated February 29, 1944 to the order of decedent as payee on Ecorse Lincoln Park Bank made by Trenton, as maker, and deposited by decedent in his bank account was the return of a loan made by decedent to said Trenton and was not income to the decedent. Of the remaining $2,884 bank deposits determined by respondent to be income because unexplained, petitioner's evidence convinces us that $1,300 of it represented the proceeds of loans and was not income. The remaining $1,584 has not been satisfactorily explained and we sustain respondent's determination as to this much of the item of $5,184 which he determined as "unexplained bank deposits." Facts with Reference to Operating Net Losses Issue for 1944 and 1945. The Commissioner has made the following adjustments to the net loss as disclosed on petitioner's return for the taxable year 1944: Net loss as disclosed by return
($32,175.67)
As corrected
( 28,954.69)
Net adjustment as computed below
3,220.98
Unallowable deductions and additional income: (a) Business bad debt
$ 5,000.00
(b) Depreciation of truck - hotel
100.00
(c) Unexplained deposits
5,184.00
(d) Office rent
300.00
(e) Transportation, entertainment
3,050.00
(f) Repairs and painting - hotel
750.00
(g) Hotel personal expenses
666.50
Total
$15,050.50
Nontaxable income and additional deductions: (h) Royalty income
$10,000.00
(i) Loss on sale of auto
650.00
(j) Amortization of patent
179.52
(k) Guaranty of investment
1,000.00
Total
$11,829.52
Net adjustment as above
$ 3,220.98
*362 The Commissioner has made the following adjustments to the net loss as disclosed on petitioner's return for the taxable year 1945: Net loss as disclosed by return
($33,266.71)
As corrected
( 16,966.71)
Net adjustment as computed below
16,300.00
Unablowable deductions and additional income: (a) Reimbursed business expenses
$14,000.00
(b) Transportation and entertainment
4,000.00
Total
$18,000.00
Nontaxable income and additional deductions: (c) Office rent
$ 1,200.00
(d) Guaranty of investment
500.00
Total
1,700.00
Net adjustment as above
$16,300.00
As applying to the taxable year 1944, it has been stipulated that: "The petitioner is entitled to an additional deduction of $2,240.00 for the taxable year ended December 31, 1944, for the expense of maintaining a London business office. "There shall be disallowed as transportation and entertainment expense for the taxable year ended December 31, 1944, the amount of $1,525.00 in lieu of $3,050.00 set forth in Exhibit 'C'." As applying to the taxable year 1945 it has been stipulated that: "There shall be disallowed as transportation and entertainment expense for the taxable *363 year ended December 31, 1945, the amount of $2,000.00 in lieu of $4,000.00 set forth in Exhibit 'D'." Effect will be given to the foregoing stipulations in a computation under Rule 50. After a careful consideration of all the evidence, we find that no part of the deficiency is due to fraud with intent to evade the tax. Opinion BLACK, Judge: Respondent has determined that the decedent failed to include in his 1943 income $20,000 received from Prosperity for assistance in procuring materials which were scarce due to the war. Respondent has also determined that this part of the deficiency is due to fraud with intent to evade taxes under section 293 (b), I.R.C., so that a 50 per cent fraud penalty is applicable. Petitioner contends that no such income was received and denies the fraud determination. With reference to respondent's determination that this amount was received by decedent prior to his death and should be included in his income for 1943, the law presumes that the Commissioner's determination is correct. Some evidence as to this issue was presented by both sides, but after a careful consideration of all this evidence, we are unable to find that *364 petitioner has sustained its burden of proof to show that respondent erred in his determination that this $20,000 should be added to decedent's income. We, therefore, sustain respondent's determination for what we regard as the lack of sufficient evidence to overcome it. What we have said as to the $20,000 also applies to the $5,000 which respondent determined that decedent received in 1943 as "kick back" from Walter E. Bell. Accordingly, we sustain respondent's determination as to this $5,000 for what we regard as the lack of sufficient evidence to overcome it. As stated in our preliminary statement the Commissioner determined a fraud penalty of 50 per cent of the deficiency under section 293 (b) of the Code. The determination of fraud by respondent places upon him the burden of proving fraud by clear and convincing evidence. In William W. Kellett, 5 T.C. 608, we said: "What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. To be considered are all of the facts and circumstances surrounding the conduct of the taxpayer's business and all the facts incident to the preparation of the alleged fraudulent return. The *365 conclusion must be reached not on isolated bits of testimony, but on the whole record. * * *" We have applied the foregoing test to the evidence which respondent has offered to sustain his imposition of the fraud penalty, and we are unable to say that he has proved fraud on the part of decedent by clear and convincing evidence. We have accordingly found in our Findings of Fact "That no part of the deficiency is due to fraud with intent to evade the tax." In his imposition of a 50 per cent fraud penalty the Commissioner is not sustained. The next issue is whether a $5,000 loss incurred in the taxable year 1944 is an ordinary loss fully deductible or a capital loss subject to the limitations of section 117, I.R.C. The Commissioner has disallowed this deduction in his adjustment (a) for 1944 "Business bad debt $5,000." The $5,000 loss was realized when decedent sold a $23,000 claim against Trenton Technical Laboratories, Inc., for $18,000. Settlement of the dispute between the parties depends upon whether the claim sold is a "capital asset" under the definition of section 117, which provides: SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used *366 in this chapter - (1) Capital assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; The other exceptions are clearly not applicable here. Though the decedent was a promoter, who made loans and investments to numerous enterprises, certainly he was not in the business of buying and selling accounts and loans receivable. The loan in question could not be considered part of his stock in trade, includible in his inventory at the close of a taxable year, or held primarily for sale to customers in the regular course of his business. His business was promoting and managing businesses, not buying and selling loans. Therefore, since these debts must be considered property and they do not fall within any of the exceptions to the definition of "capital assets" contained in section 117, it follows that petitioner *367 is limited by the capital loss provisions. Rockford Varnish Co., 9 T.C. 171; Maurice Levy, 46 B.T.A. 423. For the same reason as explained above, we could not hold this $5,000 loss to be an ordinary and necessary business expense fully deductible under section 23 (a) (1). See Max Torodor, et al. 19 T.C. 530, promulgated December 24, 1952. The original loan by decedent constituted an asset to him and was not a deductible expense. Petitioner also argues that it is entitled to a deduction for the $5,000 loss under section 23 (k) (1), which provides for the following deduction: (k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * The debtor corporation was not insolvent and the debt was not shown to be worthless to the extent of the $5,000. The decedent being a stockholder of the debtor apparently did not see fit to exercise *368 fully his legal rights as creditor. Therefore, petitioner has not met the requirements for a deduction under section 23 (k) (1). Maurice Levy, supra. As disclosed in our Findings of Fact the respondent added to the income of Lawrence Harrison for the taxable year 1944, unexplained bank deposits in the amount of $5,184. Of this amount, it has been stipulated that a deposit of $2,300 is not income, and there remains unexplained deposits of $2,884. Mrs. White, the Secretary of decedent, loaned decedent $2,300 during the year 1944, since decedent was sometimes without adequate cash. Some of this money was spent for personal necessities and some of it was deposited. Petitioner has the burden of showing that the bank deposits in question were not due to unreported income. Having considered all the facts, we have found that $1,300 of the bank deposits in question arose out of the loans from Mrs. White and the remaining $1,584 is additional income. As shown in our Findings of Fact, the Commissioner made adjustments in the net loss of $33,266.71 as disclosed by petitioner's 1945 return so that petitioner's net loss after respondent's adjustment was $16,500. The evidence does *369 not warrant any change in the adjustment made by respondent for the year 1945, except the stipulation noted in our Findings of Fact that respondent's disallowance of transportation and entertainment expenses should be changed from a disallowance of $4,000 to a disallowance of $2,000. The net losses of petitioner for the taxable years 1944 and 1945 should be recomputed in accordance with the facts stipulated as to those years and our opinion herein as to the two issues raised as to the year 1944 and discussed above. Decision will be entered under Rule 50.