W. P. HOBBY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109663. Promulgated November 15, 1943.

*James H. Yeatman, Esq., H. I. Wilhelm, C. P. A.,* and *J. A. Phillips, C. P. A.,* for the petitioner.

*Homer J. Fisher, Esq.,* and *James L. Backstrom, Esq.,* for the respondent.

## OPINION.

STERNHAGEN, *Judge:* The Commissioner's ground for the deficiency is his determination that the gain realized by the petitioner in his disposition of the Enterprise shares in the four transactions was a short term liquidation gain in the redemption of the shares, taxable under section 115 (c) and (i). The petitioner contends that as a matter of fact he sold each of the four blocks of Enterprise shares after he had held them for more than twenty-four months, and that the gain which he realized was therefore a long term capital gain, taxable under section 117 (a) (4) and (b).

In our opinion, the evidence completely supports the petitioner's position. In each instance he in fact sold the shares to another indi-

vidual for an agreed price, and they were delivered and title to them passed. The sales were completed before the corporation redeemed or retired the shares and at the time of such redemption petitioner was not the owner or in any other way related to them. To him, the gain realized was in the sale price and he received nothing from the corporation as a redemption. The redemption occurred after petitioner had sold the shares, and we can see no ground upon which the redemption can be attributed to him.

The Commissioner argues that petitioner did not in fact sell, or may not be regarded as having sold, the shares. He says that this is because the alleged sale "had no business purpose." What kind of "business purpose" must be shown as necessary to the recognition of a sale is not made clear, and there is no statutory requirement to that effect. The question is not one of purpose, but whether the transactions were in fact what they appear to be in form. *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14. It is true that the sales were made at times when their effect would be to avoid the impact of the forthcoming redemption and the resulting tax. Petitioner, a shareholder, had an unrealized increment in his shares which he wanted to realize. Collaterally he wanted to use a legitimate transaction which would impose upon him the least tax. This is not an interdicted purpose. The primary purpose to realize the gain was a legitimate business purpose, even though it also had a collateral favorable tax effect.

The Commissioner argues that the sales were not bona fide, since petitioner's purpose was to avoid the short term gain tax which would have resulted if he had held the shares until the redemption. There was, however, no lack of good faith between the petitioner and the respective purchasers. Both intended that complete title and control should pass for a fixed price,—that for all purposes petitioner's ownership should end and the purchaser's begin with the transfer. This was fulfilled, and so far as this record discloses no one could upset the sale for lack of *bona fides* or refuse to recognize the purchaser as the owner. The petitioner's tax saving purpose did not invalidate the sale. Clearly the corporation could not have refused to recognize the purchaser as entitled to the redemption amount.

It is suggested that the sale to Borden can not be regarded as bona fide because Borden in effect gave Hobby the dividend of $1,050, thus recognizing Hobby's right and ownership. But Borden testified,— and we have no reason to doubt the testimony,—that he intended this as a gift to Hobby. Hobby did not claim the dividend as his own. The gift was one which Borden intended to and was entitled to make (see *Helvering* v. *American Dental Co.*, 318 U. S. 322), and it did not indicate that the Borden sale was any less a sale than the other three.

The Commissioner cites *Gregory* v. *Helvering*, 293 U. S. 465; *Griffiths* v. *Helvering*, 308 U. S. 355, and *Higgins* v. *Smith*, 308 U. S. 473,

but these decisions are not analogous. On the other hand, *John D. McKee et al., Trustees*, 35 B. T. A. 239, and *Clara M. Tully Trust*, 1 T. C. 611, fully support the petitioner's contention.

The determination of the Commissioner can not be sustained, and

*Decision will be entered for the petitioner.*

Reviewed by the Court.

---

Arnold, *J.*, dissenting: I am not persuaded by the reasoning of the foregoing report and I am unable to agree with the conclusion reached therein. The manner in which it exalts the form of transactions over their substance is contrary to a long line of established cases stemming from *Gregory* v. *Helvering*, 293 U. S. 465 (1935).

The facts disclose that Hobby had a block of stock which was about to be redeemed in a partial liquidation. For the sole purpose of removing the redemption gains from the operation of section 115 (c) of the Internal Revenue Code, under which they would have been taxed as short term capital gains, and to bring them under the provisions of section 117 of the Code, to be taxed as long term capital gains, Hobby resorted to the simple device of going through formal sales with four of his friends and business associates, who were familiar with his purpose and willing to cooperate therein for a consideration. It was petitioner's plan that his transferees hold the stock until the date of redemption and then surrender it for redemption. The evidence is clear that the transferees understood that this was what they were to do and they acted subsequently in accordance with petitioner's plan. In view of this fact the transferees received the stock subject to restrictions and commitments, and by virtue of the understanding petitioner retained control of the disposition of the stock. The only question in the case is whether Hobby successfully avoided the statute by these transfers.

The foregoing opinion concludes, in effect, that because the transfers from Hobby to his friends, separately considered, were apparently complete and valid under state law, their *bona fides* can not be subject to question for Federal revenue purposes. This is not so. Numerous transactions otherwise complete and binding have been disregarded for revenue purposes. Good faith as between transferor and transferee is immaterial if good faith toward the Government is lacking. The law does not permit taxpayers to resort to schemes or devices or enter into transactions lacking in good faith to reduce or avoid tax liability. *Gregory* v. *Helvering*, *supra; Higgins* v, *Smith*, 308 U. S. 473 (1940) ; *Griffiths* v. *Commissioner*, 308 U. S. 355 (1939) ; *Pierre S. DuPont*, 37 B. T. A. 1198; affd., *DuPont* v. *Commissioner* (C. C. A., 3d Cir., 1941), 118 Fed. (2d) 544; certiorari denied, 314 U. S. 623;

*Commissioner* v. *Dyer* (C. C. A., 2d Cir., 1935), 74 Fed. (2d) 685; *Court Holding Co.*, 2 T. C. 531; *William C. Hay*, 2 T. C. 460; *Belle G. Loewenberg*, 39 B. T. A. 844; *Chicago Title & Trust Co., Executor*, 32 B. T. A. 249. If this were not so, schemes and devices for the purpose of avoiding tax liability would go completely unchecked.

It is well settled that in the application of the revenue laws to particular transactions substance rather than form prevails, and transactions in form only may be disregarded. We have here a series of transactions, all parts of a coordinated plan devised by the taxpayer solely to technically avoid the effect of section 115 (c), *supra*, by casting what was shortly about to become a redemption of stock into the form of sales. The taxpayer admitted that tax avoidance was his only motive and he neither alleged nor proved any other purpose. Tax avoidance alone is not a legitimate business purpose sufficient to lend these transactions any reality. *Higgins* v. *Smith, supra; Electrical Securities Corporation* v. *Commissioner* (C. C. A., 2d Cir., 1937), 92 Fed. (2d) 593; *William C. Hay, supra*. Cf. *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436. Petitioner's gains were realized from what were, in substance, distributions in partial liquidation, although sales in form.

*John D. McKee et al., Trustees*, 35 B. T. A. 239; and *Clara M. Tully Trust*, 1 T. C. 611, relied upon in the foregoing report, are distinguishable in fact and in principle from the instant case. The transaction in the *McKee* case was not motivated by a desire to avoid the effect of a specific statutory provision, as here, but rather to fix the taxable character of the gain involved, by reason of a doubt as to the effect of the then prevailing administrative interpretations and Board of Tax Appeals decisions. Cf. I. T. 1637, C. B. II-1, p. 36; I. T. 2488, C. B. VIII-2, p. 127; I. T. 2678, C. B. XII-1, p. 117; *Henry P. Werner*, 15 B. T. A. 482; *John H. Watson, Jr.*, 27 B. T. A. 463. When the transaction in controversy in the *McKee* case occurred on January 31, 1931, I. T. 2488, *supra*, and *Henry P. Werner, supra*, were in force and both held that the proceeds of redemption were capital gains, but the petitioners there, apparently out of an abundance of caution, took the course they did to definitely establish the proceeds as capital gains. In doing so, they were not attempting to avoid any statute or any existing administrative or judicial interpretation of a statutory provision. As we said at page 242, "The petitioners were acting in abundant good faith in taking the steps which they took on January 31, 1931."

In *Clara M. Tully Trust, supra*, the stock had not been called for redemption, as here, and there the sale was bona fide to an outside third party, without restrictions or commitments of any kind and without understanding for a subsequent resale by the purchaser to the issuing corporation. See *Court Holding Co., supra*, p. 540. The

issuing corporation sought to buy in some of its outstanding stock, which was held by others as well as petitioners. Petitioners could hold their stock as an investment or sell it. For petitioners there to then realize on their investment it was necessary to sell. If they desired to sell they had the choice to sell either to the corporation or upon the open market. The choice was made to sell to a purchaser which would result in the least amount of tax liability, which the courts recognize a taxpayer has the right to do. Petitioner here, however, knowing his stock would soon be redeemed at par, had no choice to hold his stock as an investment, and routed it through some of his friends in the form of sales for the sole and only purpose of getting it out of his hands before it was redeemed and thereby escaping the tax consequences of section 115 (c). The business purpose there involved was a realization on taxpayer's investments. Here such purpose was not present, as the realization of petitioner's investment was imminent through redemption of his stock. There was no evidence to indicate a desire to realize sooner on his investment. Tax avoidance was his only purpose.

Section 115 (c), *supra*, was enacted in its original form as section 115 (c) of the Revenue Act of 1934. The primary purpose of that act, and the specific purpose of section 115 (c), was to prevent tax avoidance. H. Rept. No. 704, 73d Cong., 2d sess.; S. Rept. No. 558, 73d Cong., 2d sess. Congress could not have intended that a section designed to prevent tax avoidance should be avoided by a device such as the one here, and by so holding we "permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation." *Higgins* v. *Smith, supra*, p. 477.

It is my opinion that for Federal tax purposes each of the four transactions was lacking in good faith and that they should be disregarded and section 115 (c) applied in determining Hobby's tax liability for 1939.

———

BLACK, J., dissenting: The findings of fact which are made the basis of the majority opinion show that on January 1, 1939, petitioner owned 1,575 shares of nonpar, second series, $6 dividend, preferred stock of the Enterprise Co., Beaumont, Texas. All of these shares were redeemed in 1939 on the respective dates set out in the findings of fact. Prior to their redemption petitioner made four alleged sales which aggregated the number of shares which he owned. As to three of these sales, it is my view that the evidence establishes effective, completed sales and that at the time the shares of stock covered by these three sales were redeemed petitioner was not the owner thereof and can not be taxed thereon under section 115 (c) and (i) of the Internal Revenue Code. I agree to the treatment accorded these three sales by the majority opinion.

As to the alleged sale of 700 shares to E. H. Borden on September 1, 1939, I do not believe that the evidence is sufficient, when all the facts and circumstances are considered, to establish an effective and completed sale from petitioner to Borden. Borden, in consideration of his accommodating Hobby in this transaction, was to receive the $1,050 quarterly dividend to be paid on this stock October 1, 1939. The evidence shows that "by check dated September 29, 1939, the Enterprise Co. paid the dividend due October 1, 1939, to Borden in the amount of $1,050." Under date of October 7, 1939, Borden credited this dividend back to Hobby upon the cost of an apartment building which he was at that time building for Hobby. Notwithstanding Borden's explanation that he intended the credit of $1,050 as a gift to Hobby, I am unconvinced. I see no reason why he should be making a gift of $1,050 to Hobby.

It seems to me that this alleged sale should be treated as lacking reality and that Hobby should be regarded as the owner of these particular 700 shares on the date of their redemption. Cf. *Commissioner* v. *Dyer*, 74 Fed. (2d) 685. From the holding of the majority opinion with respect to this alleged sale, I respectfully dissent.

---

HILL, *J.*, dissenting: I concur in the dissenting opinion of Judge Arnold, but deem it appropriate to offer some additional observations which I think emphasize the reasons for disagreement with the holding of the majority.

It is my opinion that the various transfers of stock were not sales, but were merely transactions in the form of sales to effectuate an evasion of income tax by petitioner.

There were involved in the four transfers of stock a total of 1,575 shares. The number of shares in each block of stock transferred had been called for redemption prior to such transfer. It was known by everyone connected with the transactions that such stock had at the time of transfer a redemption value of $100 per share and all of the stock so transferred except the block of 275 shares first transferred had an additional value measured by an accrued dividend of $1.50 per share. It appears therefore that the 1,575 shares involved had a redemption value of $157,500 plus accrued dividends of $1,950, or a total of $159,450. The stock had a value as collateral for loan purposes equal to its redemption value, since the cash for such redemption was already in the possession of the depositary bank, awaiting only the redemption day for its use in liquidating the stock.

The transferees of the stock neither invested anything of value in the stock nor assumed any financial risk or hazard in connection with such transfers. It was known by everyone concerned that it was a certainty that the redemption proceeds would meet every financial

requirement involved in the transactions. Accordingly, the transfers were so arranged that the redemption value and the redemption money were made available to relieve the transferees of any financial investment, or any financial risk or hazard.

It is admitted by the petitioner that the stocks were transferred only for tax reduction purposes. It could not be successfully contended otherwise in the face of the fact that in making such transfers petitioner sacrificed $2,225 of the redemption value of the stock. This was the total amount of the bonuses which petitioner's friends received for their cooperation in the petitioner's tax evasion scheme. Clearly, the transactions were not sales of the stock but merely an arrangement entered into between petitioner and certain of his friends whereby he received an advance of all but a small portion of the redemption money a few days prior to the date of such redemption. The money which petitioner received was provided by loans to be repaid out of the proceeds of the redemption pursuant to an anticipatory arrangement whereby petitioner received all of the redemption money except the small amount received as bonuses by his accommodating friends, who in reality bought nothing, paid nothing, and assumed no financial risk or hazard for the part they played in petitioner's tax evasion scheme. While the transactions were invested with the guise of sales, they had no substance as such. To me it appears patent that in reality the money which petitioner received for the stock in question represented the proceeds of liquidation and not of sales of capital assets.

HARRON, *J.*, agrees with this dissent.