ROCKFORD VARNISH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10477.   Promulgated August 7, 1947.

*Maurice S. Bush, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $10,549.28 in excess profits tax for 1943. The only issue for decision is whether a loss of $11,442.43 resulting from the sale of customers' notes was deductible as an ordinary loss or was a capital loss and of no tax benefit. The facts were stipulated.

The petitioner, an Illinois corporation, filed its return for 1943 with the collector of internal revenue for the first district of Illinois. It used an accrual method of accounting and reporting income.

It was engaged in the business of manufacturing and selling finishing materials such as varnish and shellacs. It sold products to Union Furniture Co. on open account during 1933 and prior thereto. Payments were slow and the petitioner accepted secured trust deed notes of the customer in the amount of $14,788 on July 31, 1933. The petitioner collected $3,992.76 of principal on the notes. It sold the notes on April 28, 1943.

The petitioner sold products in 1936 and prior thereto to Rockford

Chair & Furniture Co. on open account. Payments were slow and the petitioner, on November 30, 1936, accepted secured trust deed notes of the debtor in the amount of $13,100 in payment of the account. It sold the notes for $5,000 on December 31, 1943.

The sales of products to the two customers were in the ordinary course of the business of the petitioner.

The petitioner deducted $11,442.43 as a worthless debt representing its loss on the notes. The Commissioner disallowed the deduction and explained that the sales resulted in capital losses which did not reduce taxable income, since there were no capital gains against which to offset the losses. The petitioner now claims only that the losses were deductible as ordinary losses under section 23 (f) of the Internal Revenue Code.

Section 23 (g) limits losses from sales of capital assets to the extent provided in section 117, i. e., to the amount of gains from the sale or exchange of capital assets. Capital assets are defined as follows in section 117 (a) (1) :

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in esction 23 (1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer.

The notes were property held by the taxpayer. They were not stock in trade or other inventoriable property, depreciable property, or real property used in the business of the petitioner. The petitioner contends that they were property held by it primarily for sale to customers in the ordinary course of its trade or business. It cites *Hercules Motors Corporation*, 40 B. T. A. 999; *Joe B. Fortson*, 47 B. T. A. 158; and *Harry Dunitz*, 7 T. C. 672. See also *Gilbert* v. *Commissioner*, 56 Fed. (2d) 361, reversing 21 B. T. A. 1245. The *Dunitz* case is quite different factually and is not in point. Here, as in the other three cases, the property came into the hands of the petitioner in the ordinary course of its business and was not acquired to be held as an investment. But in those cases there was a regular practice shown of taking the property in payment for products (goods or services) and then selling the property, while, here, the notes were taken long after the goods had been sold, the notes were not sold for many years,

and the transactions in the notes were isolated rather than mere incidents of a regularly used practice. It can not fairly or properly be said that they were held primarily for sale to customers in the ordinary course of the petitioner's business. It follows that they were capital assets within the statutory definition and the limitation applies. This may be unfortunate, but it is in accordance with our understanding of the law as enacted by Congress.

*Decision will be entered for the respondent.*