CONRAD N. HILTON AND SARI G. HILTON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18287. Promulgated October 24, 1949.

*Wright Matthews, Esq.*, and *Thomas O. Shelton, Jr., Esq.*, for the petitioners.

*Allen T. Akin, Esq.*, for the respondent.

626

OPINION.

BLACK, *Judge*: The question in this proceeding is whether the income realized on the disposition of a $175,000 note in 1944 is taxable as ordinary income or as a capital gain. Petitioners contend that Hilton made a bona fide sale of the note and, therefore, the transaction is within the purview of section 117 of the Internal Revenue Code, the pertinent provisions of which are printed in the margin.[1] In support of their contention petitioners cite *Stanley D. Beard*, 4 T. C. 756; *W. P. Hobby*, 2 T. C. 980, and *Clara M. Tully Trust*, 1 T. C. 611.

The respondent contends that the amount received by Hilton on the disposition of the note was in substance a payment of the note by the hotel and, therefore, does not represent the proceeds of a sale. In support of his contention respondent cites *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *Griffiths* v. *Commissioner*, 308 U. S. 355; *Higgins* v. *Smith*, 308 U. S. 473; *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609; and *Lee* v. *Commissioner*, 119 Fed. (2d) 946, affirming 42 B. T. A. 920. Respondent also contends that petitioners are estopped from asserting that the amount received over the agreed basis should be taxed as a long term capital gain. The foundation of this contention is the agreement between Hilton and respondent in which Hilton's 1936 to 1939 tax liability was settled.

The cases cited by petitioners are cases wherein the taxpayers, who were holders of preferred stock which had been called for redemption, made unrestricted bona fide sales to third persons in order that the petitioners might have a long term capital gain and a lesser tax liability than would have resulted if they had waited for redemption. We held in those cases that a bona fide unrestricted sale to third persons for the sole purpose of reducing petitioners' tax liability was a business purpose, and the petitioners were entitled to claim the tax benefit resulting from the sale of a capital asset. The note in Hilton's hands represented a capital asset. *Rockford Varnish Co.*, 9 T. C. 171. Therefore, if the transaction herein represented a bona fide sale, the

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business) but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer;

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income.

income therefrom is taxable as a long term capital gain under the provisions of section 117 of the code. *Stanley D. Beard, supra; W. P. Hobby, supra;* and *Clara M. Tully Trust, supra.* If, however, the transaction represented a payment of the note by the hotel, the income therefrom can not be treated as a capital gain, notwithstanding the fact that Hilton labeled the transaction a sale. Cf. *Lee* v. *Commissioner, supra.*

Respondent argues that the payment of $175,000 to Hilton by the bank really represented a payment of the note by the hotel. He contends that in substance the hotel borrowed the money and the bank was used as a conduit to pay Hilton. This contention can not stand, as the evidence shows there was no intention on the bank's part to lend money to the hotel. The transaction was between Hilton, as the holder of the note, and the bank, as the purchaser. Any consideration the bank gave the hotel's ability to pay was the usual consideration any purchaser gives the financial responsibility of the maker, but this consideration does not transform an otherwise bona fide purchase into a loan to the maker.

The cases cited by respondent are cases in which *meaningless* steps were taken to obtain a tax benefit and support respondent's assertion that "the incidence of taxation depends upon the substance of the transaction." *Commissioner* v. *Court Holding Co., supra.* A mask of legal formalisms can not change what actually transpired.

Whether petitioner is entitled to the benefit of section 117 depends upon the substance of the transaction—whether there was a bona fide sale of all or any part of the note. On March 13, 1944, Hilton began negotiations for the sale of the hotel's note, on which there was then due a balance of $175,000. He desired to sell the entire note. Hilton's desire to sell the note was twofold: He needed additional cash for the purchase of the Stevens Hotel in Chicago and the sale of the note was one way to get it, and also he was informed that if he sold the note any income realized could be treated as capital gain, whereas if he waited for payments on the note the income would be treated as ordinary income in accordance with the settlement agreement involving his 1936 to 1939 taxes. If there was a bona fide sale by Hilton, it must be recognized despite the fact that one of his motives was tax saving. In *Clara M. Tully Trust, supra,* we stated: "It has been said many times by the courts that if a method to minimize taxes is carried out by legal means and is bona fide and not a mere sham, it is not subject to censure." See also *Stanley D. Beard, supra.* Examining the transaction in an attempt to ascertain its real character, we find that during the entire course of the negotiations it was understood by Young, who was purchasing the note from Hilton for the El Paso National Bank, that the note would be reduced to $100,000 by a $75,000 payment by the hotel. This was necessary because the bank's legal

limit for loans was $100,000. We are not troubled by the fact that Hilton received a credit from the bank of $175,000 prior to the bank's receiving the $75,000 from the hotel, for there was an understanding that there would be only $100,000 owing on the note when the entire transaction was completed. Hilton acted in a dual capacity during the negotiations for the sale of the note—as the holder of the note, and as the agent of the hotel. As owner of all but three shares of the Lubbock Hilton Hotel Co., he made it plain to Young that the hotel was ready and able to pay $75,000 of the note. The purchase of the note included the forthcoming payment of $75,000 by the hotel as part of the transaction. There was no bona fide sale of the $75,000 portion of the note, but rather a payment of $75,000 by the hotel to Hilton, with the bank acting as a conduit. We hold that as to the $75,000, Hilton received in substance a payment on the note by the hotel. The devious route taken by Hilton to obtain payment of the note has the same tax effect as if he had followed a direct route. See *Minnesota Tea Co.* v. *Helvering, supra.* We also hold that Hilton made a bona fide sale of $100,000 of the note and, therefore, as to this amount section 117 of the code controls. *Stanley D. Beard, supra; W. P. Hobby, supra;* and *Clara M. Tully Trust, supra.*

There remains but one other point for us to consider, the question of estoppel raised by respondent. Respondent contends that where the deficiencies of prior years are settled by an agreement providing for taxing in subsequent years as ordinary income the excess payments received on a nonnegotiable note over an agreed basis, petitioner is estopped in the taxable year from contending that such excess payments should be taxed as long term capital gains.

The settlement agreement is set out in our findings of fact, and we can see no basis for respondent's contention that this agreement estops petitioner from claiming the benefit of section 117. The agreement provides that 70 per cent of the *payments* on the note shall be treated as ordinary income. There is nothing in the agreement that provides for the treatment of the proceeds of a sale as ordinary income. In reaching the settlement there were concessions by both parties. If it had been intended that a sale of the note was to be treated in the same manner as payments on the note, it would have been a simple matter to have drawn the agreement to include a sale or disposition of the note. Petitioners are not estopped from claiming the benefit of section 117 as to that portion of the transaction which was actually a sale.

The settlement agreement for the years 1936 to 1939, inclusive, provides that as to any payments on the note, 30 per cent shall constitute a return of cost and 70 per cent shall be reported as ordinary income and, therefore, the $75,000 payment must be so treated. It is apparent from a reading of the settlement agreement that it was intended that the $250,000 note should have a basis of $75,000 or 30 per

cent of the value of the note; therefore, as to the $100,000 which represented à bona fide sale there is a long term capital gain of $70,000.

*Decision will be entered under Rule 50.*