## METRA CHEM CORP., ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23223-82—23225-82.     Filed March 23, 1987.

*Edward DeFranceschi*, *Joan Apkin*, and *Lucien P. Gauthier*, for the petitioners.

*Pamela V. Gibson*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined deficiencies in, and additions to, petitioner Metra Chem Corp.'s Federal income taxes as follows:

| TYE Mar. 31— | Deficiency | Addition to tax sec. 6653(a), I.R.C. 1954[2] |
|---|---|---|
| 1976 | $56.57 | - - - |
| 1977 | 20,788.66 | $1,533.13 |
| 1978 | 21,476.71 | 1,157.30 |
| 1979 | 9,559.78 | 477.99 |

The Commissioner also determined that petitioners Richard and Shirley M. Laroche were liable for the addition to tax

---

[1]Cases of the following petitioners have been consolidated herewith: Richard and Shirley M. Laroche, docket No. 23224-82; and Ronald D. and Beverly Laroche, docket No. 23225-82.

[2]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.

under section 6653(a) in the amount of $154.72 for 1977, and that petitioners Ronald D. and Beverly Laroche were liable for the addition to tax under section 6653(a) in the amount of $255.55 for 1977. The issues for our decision are: (1) Whether petitioner Metra Chem Corp. is entitled to deductions for the cost of items used by the company's salesmen as promotional premiums; (2) whether petitioner Metra Chem Corp. is liable for the addition to tax for negligence under section 6653(a); and (3) whether petitioners Richard and Shirley M. Laroche and petitioners Ronald D. and Beverly Laroche are liable for the addition to tax for negligence under section 6653(a) for 1977.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

At the time the petitions in this case were filed, petitioner Metra Chem Corp. had its principal place of business in Shrewsbury, Massachusetts; petitioners Richard and Shirley M. Laroche, husband and wife, resided in Hudson, New Hampshire; and petitioners Ronald D. and Beverly Laroche, husband and wife, resided in North Chelmsford, Massachusetts. All the petitioners filed Federal income tax returns for the years in issue with the Internal Revenue Service Center in Andover, Massachusetts.

Metra Chem Corp. (Metra Chem) is a Massachusetts corporation formed in 1975. It reports its income on an accrual method, with a tax year ending March 31. We shall identify a taxable year by the calendar year in which it ends. Petitioners Ronald and Richard Laroche, who are brothers, serve as the officers of Metra Chem.

Metra Chem is a wholesaler of industrial chemicals. It sells road salt, liquid chloride, and other chemicals to various users, including municipalities, fire departments, and colleges. Its products are sold by salesmen who spend much of their time visiting customers away from Metra Chem's office.

Metra Chem exerted a substantial degree of control over the activities of its salesmen. It offered training programs and assigned sales territories for new salesmen. It required that salesmen file weekly written reports to keep track of

their sales efforts. In addition, Metra Chem provided its salesmen with fringe benefits, such as vacation and sick pay and insurance coverage.

Metra Chem operated in competition with several other businesses. Its products and the prices for such products were approximately the same as those offered by its competitors. As a result, a customer could meet its needs for industrial chemicals from any of the businesses in Metra Chem's market. Such freedom of movement made the industrial chemical market highly competitive.

In an attempt to promote loyalty among its customers, Metra Chem instituted a "premium program," under which customers were given various promotional items. The promotional items, or premiums, included equipment used in applying the chemicals purchased by the customers. In addition, customers or the employees of such customers received a wide variety of consumer goods, including citizen band radios, television sets, watches, fishing equipment, prime meats, and, in one instance, a gocart. Some of Metra Chem's competitors had instituted similar premium programs.

Metra Chem purchased the items used in the premium program in large quantities and stored such items in its warehouse. All the premiums were made available to the company's salesmen at the warehouse. When salesmen found it inconvenient to go to the warehouse to inspect such items, they called the Metra Chem office to see what was available. When a salesman selected a premium from the warehouse, he signed a receipt and took the item with him. When a salesman requested an item by phone, such item was mailed to him at his home.

A different procedure was used when a salesman selected prime meats, such as sirloin steak and filet mignon, as the premium. On such occasions, the salesman called Richard Laroche in Metra Chem's office and told him the name and address of the individual to whom the meat was to be sent. Mr. Laroche then ordered the meat from Metra Chem's supplier and instructed that the meat be shipped directly to the individual.

Metra Chem exercised only minimal control over its salesmen's participation in the premium program. It encour-

aged the salesmen to use the program to promote customer loyalty and to establish new accounts, but the salesmen were to use their discretion in deciding when to make a gift. Metra Chem had no control over who ultimately received premiums. At times, salesmen converted premiums to their personal use.

Metra Chem charged each salesman for the premiums given by him at prices representing a 5- to 15-percent markup over the company's costs for the premiums. The amount of such markup was not uniform, but was set at the discretion of Ronald Laroche. Metra Chem did not mark up its costs for the prime meats. The charges for the items selected by a salesman appeared on his commission statement which he received each month. At times, the commissions earned by a salesman in a month were insufficient to cover the charges for the premiums selected. On such occasions, the salesman's commission statement reflected a credit balance, representing an amount owed to Metra Chem. There is no evidence regarding whether Metra Chem attempted to collect such amounts.

The amount of gross commissions earned by a salesman was reduced by commissions on sales for which the company had not received payment, by advances for automobile expenses, and by the charges for premiums selected by the salesman. Metra Chem issued W-2 forms to its salesmen for the years in issue. The wages reported on such a form reflected the salesman's net commissions. Such wages did not include the amounts "charged back" for premiums. Metra Chem withheld employment taxes from net commissions.

The transfers of the premiums to the salesmen were not reflected in the general sales records or in any sales account of Metra Chem. The markups on such items were not recognized as gains on sales by the corporation. Metra Chem's payments for the premiums were recorded in its cash disbursements records. It did not maintain an inventory account of such items.

On its corporate Federal income tax return for 1977, Metra Chem included in its cost of goods sold expenditures of $23,878.63 attributable to the cost of premiums. On its return for 1978, Metra Chem deducted $44,743.14 attribut-

able to "promotional premiums." On its return for 1979, Metra Chem deducted expenditures for premiums of $44,058.95 and described such expenditures as a deduction for "advertising and promotion."

Ronald and Richard Laroche formed Sax Management Corp. (Sax) to provide management services to Metra Chem. Ronald and Richard own all the outstanding stock of both Metra Chem and Sax. During 1977, Ronald and Richard authorized and received dividends from both Sax and Metra Chem. Ronald received $10,000 from Sax and $200 from Metra Chem. Richard received $6,666 from Sax and $200 from Metra Chem.

On their Federal income tax return for 1977, Ronald and Beverly Laroche reported gross income of $47,088. They reported no income from dividends in 1977. On their Federal income tax return for 1977, Richard and Shirley Laroche reported gross income of $33,786. They reported no income from dividends in such year. All of the Laroches employed Donald R. Nash to prepare their returns. Mr. Nash also served on the board of directors of Metra Chem and prepared its corporate Federal returns.

In his notice of deficiency to Metra Chem, the Commissioner adjusted Metra Chem's cost of goods sold for 1977 to eliminate the cost of the premiums, and he disallowed the deductions for the premiums claimed in 1978 and 1979.[3] He determined that the expenditures for Metra Chem's premium program were subject to the ordinary and necessary business expense test of section 162 and to the business gift provisions of section 274, and that the deductions for premiums failed to meet the requirements and limitations of such sections. In the alternative, the Commissioner determined that deductions for items distributed to a Government employee were disallowed because the items constituted illegal bribes or kickbacks under section 162(c).

In a notice of deficiency issued to Ronald and Beverly Laroche, the Commissioner determined that they were liable for the addition to tax under section 6653(a) for 1977, and in a notice issued to Richard and Shirley Laroche, the Commissioner determined that they were also liable for such

---

[3]The deficiency for 1976 relates solely to the availability of a new jobs credit carryback and depends on the resolution of issues raised with respect to 1979.

addition. Before the issuance of such notices, the Laroches had agreed to pay deficiencies attributable to the inclusion of the dividends received from Sax and Metra Chem in 1977.

## OPINION

The first issue for our decision is whether Metra Chem is entitled to treat as cost of goods sold the expenditures for the premiums used in its promotional program during 1977, 1978, and 1979. Metra Chem claims that the transfers of the premiums to the salesmen constituted sales for Federal income tax purposes. It therefore argues that the cost of such items should be considered cost of goods sold, regardless of the original treatment of the items on its corporate Federal income tax returns. The Commissioner contends that the transfers of the premiums by Metra Chem were not sales but were business gifts. Therefore, he argues that the treatment of the expenditures for such premiums is subject to the ordinary and necessary test of section 162 and the business gift provisions of section 274, and that such expenditures failed to meet the requirements of such sections.[4]

Since the transfers of premiums (other than prime meats) between Metra Chem and its salesmen took place in Massachusetts, we must look to the laws of that State to determine whether such transfers were in fact sales. See *Aquilino v. United States*, 363 U.S. 509, 512-513 (1960); *Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940). Under Massachusetts law, a sale occurs upon the passing of title to property from a seller to a buyer for a price. See Mass. Gen. Laws Ann. ch. 106, sec. 2-106(1) (West 1980). Title passes in most cases when the seller physically delivers the goods to the buyer. See Mass. Gen. Laws Ann. ch. 106, sec. 2-401(2) (West 1980).

In our judgment, the transactions in issue have all the elements of a sale. Metra Chem charged the salesmen a "price" for the premiums. Such price consisted of Metra

---

[4]Although the Commissioner determined in his notice of deficiency that the premiums were illegal bribes or kickbacks under sec. 162(c), he has not argued this position at trial or on brief. We observe that he bears the burden of proof on this issue (sec. 162(c)(1)) and hold that he has failed to carry his burden.

Chem's cost of the item and a 5- to 15-percent markup. Metra Chem deducted the charge from the commissions paid to the salesmen.

Title to the premiums passed when the salesmen picked up such items at Metra Chem's warehouse or when the company shipped the goods to the salesmen's residences. After that time, Metra Chem relinquished control of the goods. Although the premiums were meant to be used in Metra Chem's promotional program, the salesmen selected the recipients of the premiums, and Metra Chem had no way of knowing who received the premiums or whether they were used as intended. Its salesmen were free to, and occasionally did, convert premiums to their personal use.

The handling of the gifts of prime meat presents special questions. Here, too, the salesmen decided who would receive the gifts, and the salesmen provided the consideration. Yet, since the meat was shipped directly from the supplier to the employees of the customers, the salesmen did not acquire possession of it. Even so, our analysis leads us to conclude that the gifts of the meat were in effect being made by the salesmen since they selected the recipients and furnished the consideration. Thus, we view the transactions as sales of the meat from Metra Chem to the salesmen and gifts by the salesmen.

We recognize that Metra Chem's accounting treatment of the transfers is inconsistent with its characterization of such transfers as sales. It maintained no opening or closing inventory accounts for the premiums. The prices which Metra Chem charged its salesmen for such items were not posted to any sales account. Finally, the company described the cost of such items as expenditures for "promotional premiums" or for "advertising and promotion" on its corporate Federal income tax returns for 1978 and 1979. However, whether or not a transaction is a sale is to be determined from a consideration of the substance of the transaction and not merely from its form. *Hilton v. Commissioner*, 13 T.C. 623, 630 (1949). The entries made upon the books of the parties to the transaction, while of some evidentiary value, are not controlling. *Estate of Lehr v. Commissioner*, 18 T.C. 373, 380 (1952). Despite Metra Chem's accounting treatment of the transfers of the premi-

ums, we conclude that such transfers constituted sales for Federal income tax purposes.[5]

Therefore, Metra Chem's cost of premiums constituted the cost of goods sold. Such costs are subtracted from gross receipts to arrive at gross income. Sec. 1.61-3(a), Income Tax Regs. Thus, such costs are not treated as deductions from gross income and are not subject to the limitations on deductions contained in sections 162 and 274. See secs. 1.61-3(a), 1.162-1(a), 1.471-3, Income Tax Regs.; *B.C. Cook & Sons, Inc. v. Commissioner*, 65 T.C. 422, 428 (1975), affd. per curiam 584 F.2d 53 (5th Cir. 1978).

The next issue for decision is whether Metra Chem is liable for the addition to tax for negligence under section 6653(a) for 1977, 1978, and 1979. Section 6653(a) provides for an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. The Commissioner determined that Metra Chem was subject to the negligence addition because of its tax treatment of the cost of the premiums. However, the issue raised by such treatment presents complex legal questions, and we found it difficult to arrive at our conclusion. Further, we have found Metra Chem to be substantially correct in its treatment of the premiums. For such reasons, we conclude that the addition to tax for negligence is not justified. See *Belz Investment Co. v. Commissioner*, 72 T.C. 1209, 1233 (1979), affd. 661 F.2d 76 (6th Cir. 1981).

The final issue for our decision is whether petitioners Richard and Shirley Laroche and Ronald and Beverly Laroche are liable for the addition to tax under section 6653(a) for negligence for 1977. Richard and Ronald Laroche have previously conceded that they failed to report the cash dividends received from Metra Chem and from Sax on their Federal income tax returns for 1977. The Commissioner determined that such failure was due to negligence and that the Laroches were subject to the addition to tax under

---

[5]We do not have before us Metra Chem's salesmen, nor the treatment of the W-2s issued to them; nevertheless, to avoid the risk that our silence might be construed as approval, we observe that Metra Chem's method of charging the salesmen for the premiums should be modified. The commissions earned by the salesmen, without reduction for the charges for the premiums, should be treated as wages on the W-2s and reported by the salesmen as gross income; they may then claim deductions for the costs of the premiums to the extent allowed by secs. 162 and 274. It will be necessary for the salesmen to conform to the limitations of those sections and maintain the records required by such provisions.

section 6653(a). The petitioners have the burden of proving that the Commissioner's determination is erroneous. *Pritchett v. Commissioner*, 63 T.C. 149, 174 (1974).

The Laroches claim that they took all the steps they could to insure that accurate returns were filed. They point out that the dividend payments were reflected in the corporate records and that such records were given to their accountant. Further, they note that the accountant was a director of Metra Chem who knew about the dividends but failed to report them on the income tax returns. For such reasons, the Laroches argue that their reliance on their accountant serves to protect them from the negligence addition.

As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. See, e.g., *Pritchett v. Commissioner, supra* at 174-175; *Enoch v. Commissioner*, 57 T.C. 781, 802 (1972); *Soares v. Commissioner*, 50 T.C. 909, 914 (1968). As the petitioners have noted, this Court has declined to sustain the addition to tax under section 6653(a) in cases in which the taxpayer relied in good faith on the advice of a tax expert. See, e.g., *Woodbury v. Commissioner*, 49 T.C. 180, 199 (1967); *Brown v. Commissioner*, 47 T.C. 399, 410 (1967), affd. per curiam 398 F.2d 832 (6th Cir. 1968). However, a close examination of these cases reveals that they raised questions as to the tax treatment of complex transactions and that the position taken on the returns with respect to such items had a reasonable basis.

This case presents no such difficult issues. Ronald Laroche simply failed to report more than $10,000 in cash dividends which he received from corporations controlled by him. Richard Laroche similarly failed to report more than $6,800 in such dividends. The unreported dividends constituted over 21 percent of Ronald and Beverly Laroche's gross income for 1977 and over 20 percent of Richard and Shirley Laroche's gross income for such year. We believe that such a substantial underreporting of income would not have gone unnoticed if the petitioners had made even a cursory review of their returns. Under such circumstances, the petitioners may not shift responsibility for the accuracy of their returns to their accountant. *Pritchett v. Commis-*

*sioner, supra* at 174. For such reason, we hold that petitioners Ronald and Beverly Laroche and Richard and Shirley Laroche are liable for the addition to tax under section 6653(a) for negligence for 1977.

*Decisions will be entered for the petitioner in docket No. 23223-82 and for the respondent in docket Nos. 23224-82 and 23225-82.*