T.C. Memo. 2013-72

UNITED STATES TAX COURT

RAFAEL CASTILLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14514-11.                    Filed March 12, 2013.

<u>Cyril Leonard Lawrence</u>, for petitioner.[1]

<u>Tyler N. Orlowski</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a $33,318 deficiency and a

$6,663.60 section 6662(a) penalty with respect to petitioner's Federal income tax

---

[1]Cyril Leonard Lawrence represented petitioner at the trial of this case.  On September 13, 2012, Lawrence filed a motion to withdraw as counsel, which the Court granted on October 15, 2012.

[*2] liability for 2007.  After concessions, the issues for decision are whether petitioner must recapture depreciation claimed for 2006 in relation to a Hummer vehicle, whether he is entitled to a section 179 deduction relating to a restaurant business, whether he is entitled to rental expense deductions, and whether he is liable for the accuracy-related penalty.  All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioner resided in California when he filed his petition.  During 2007, petitioner was a real estate sales agent and owned rental properties.  He also had an interest in a restaurant known as Villa's Mexican Grill.

Real Estate Agent Activities

Petitioner was a real estate sales agent with PMZ Realty before, during, and after 2007.  During 2006 and 2007, petitioner owned two BMW automobiles and a Range Rover.  One BMW was traded in when the second was purchased.  On November 22, 2006, petitioner purchased a Hummer for $34,799.  He sometimes used the Hummer in advertising PMZ real estate activities by attaching a

[*3] removable advertising sign to the side of the Hummer. He also used the various vehicles for personal purposes and in relation to business activities other than his real estate sales activity, including Villa's Mexican Grill, described below. Petitioner's girlfriend, who later became his wife, drove the Range Rover for personal purposes in 2007.

On his 2006 and 2007 tax returns, petitioner claimed that he used the Hummer, the BMWs, and the Range Rover each 100% for business. For 2006, he claimed a depreciation deduction of $56,000 under section 179 in relation to the Hummer (which had a cost basis of $34,799).

On his 2007 Schedule C, Profit or Loss From Business, for his real estate sales activity, among other things not in dispute, petitioner claimed a deduction for car and truck expenses of $25,922, a depreciation and section 179 expense deduction of $42,340, and a deduction for other expenses of $34,075.

Petitioner did not provide logs for use of the vehicles to his tax return preparer in relation to preparation of his 2006 or 2007 tax return. He provided only a summary sheet of expenses related to the rental properties. When his returns were audited by the Internal Revenue Service (IRS), he did not provide the examiner a log showing business use of the Hummer. A log was first provided to respondent's counsel on February 9, 2012, after this case had been set for trial.

**[*4]**  During discussions with petitioner, the examiner concluded that petitioner had ceased using the Hummer for business during 2007 and determined that petitioner must recapture depreciation of $53,200 for 2007.  (That determination allowed $2,800 of the $56,000 petitioner claimed for 2006.)  The notice of deficiency disallowed $4,800 of the depreciation and section 179 expense deduction and a deduction for $23,838 of other expenses.  The car and truck expense deduction was not disallowed in the notice.  Petitioner conceded the $4,800 adjustment in a stipulation of settled issues and failed to address the $23,838 adjustment in his pretrial memorandum or to present evidence at trial concerning it.

Rental Property Expenses

Petitioner's cousin, Diego Castillo, was a loan officer.  In 2005, petitioner and Diego Castillo purchased a duplex in Stockton, California, but only Diego Castillo was obligated on the loan by which the property was purchased.  One part of the property was rented for not more than three months, and $700 in rent was received on or about February 2, 2007.  No rental income for this property was reported on petitioner's 2007 Federal income tax return, although $11,294 in expenses was claimed on Schedule E, Supplemental Income and Loss.  No depreciation deduction was claimed on petitioner's tax return with respect to this

[*5] property because the return preparer was uncertain whether the property was to be sold or held. The statutory notice disallowed the deductions claimed and explained: "[Y]ou have not established that rental property located in Stockton was available for rent, and rental expenses * * * incurred, or if incurred, paid by you for operating rental expenses."

Petitioner also owned residential property in Modesto, California. On Schedule E to his 2007 tax return, petitioner reported expenses of $5,400 in relation to the Modesto property but did not report $13,200 that he concedes he received in rents that year for the Modesto property. No depreciation deduction with respect to this property was claimed on the return because the return preparer was uncertain whether the property was to be held or sold.

Villa's Mexican Grill

In January 2007, petitioner purchased Villa's Restaurant with Diego Castillo for a total of $25,000 and agreed that they would have equal interests in the business. Checks to the seller were drawn on Diego Castillo's checking account. They changed the name of the restaurant and operated it under the name Villa's Mexican Grill (Villa's) during 2007. Villa's filed articles of incorporation with the State of California on April 16, 2007. Stock certificates were not issued,

**[*6]** and other corporate procedures were not followed. However, petitioner and Diego Castillo held themselves out to the public and to employees of the restaurant as a corporation.

Villa's did not apply to the IRS for S corporation status. However, on or after September 2, 2010, Villa's submitted to the IRS a Form 1120S, U.S. Income Tax Return for an S Corporation, signed by petitioner as "general partner" and reporting that petitioner was a 50% shareholder. The return was rejected because no S corporation election had been filed. As of the time this case was submitted, the corporate powers of Villa's had been suspended by the State of California.

On a Schedule C attached to his Form 1040, U.S. Individual Income Tax Return, for 2007, petitioner deducted as a "depreciation and section 179 expense" $12,500 in relation to Villa's. No income was reported, and no other expenses were claimed with respect to Villa's. The $12,500 deduction was disallowed in the notice of deficiency dated May 23, 2011, because petitioner failed to establish that depreciable assets were used in petitioner's business activity reported as Villa's.

On April 12, 2012, less than a month before trial of this case, petitioner submitted to respondent's counsel a revised Schedule C for 2007 on which he reported $47,222 in gross sales and receipts and claimed $50,719 in cost of goods

**[\*7]** sold and $81,844 in expenses relating to Villa's. On April 26, 2012, petitioner submitted to respondent's counsel a 2007 Form 1065, U.S. Return of Partnership Income, for Villa's. On the Form 1065, Villa's reported $138,112 in gross receipts and $101,438 in cost of goods sold and claimed $106,832 in other deductions.

OPINION

The allocation of burden of proof, the adequacy of substantiation of deductions, and the conclusions as to the accuracy-related penalty in this case all depend in part on the credibility of petitioner's evidence. We need not accept petitioner's testimony and may and do reject it because of the many indicia of unreliability. See Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), aff'g T.C. Memo. 1967-85; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Credibility is undermined by patent reporting errors, such as claiming an excessive cost basis for the Hummer and omitting rental income while including expenses for the same properties; inconsistent explanations and admissions; implausible claims, such as 100% business use for four vehicles; absence of records; and unreliable documentation.

**[\*8]** <u>Real Estate Agent Expenses and Depreciation Recapture</u>

On Schedule C relating to his real estate sales activity, petitioner claimed deductions for other expenses that were disallowed in the statutory notice. Petitioner abandoned that issue by failing to address it in his pretrial memorandum or to produce evidence of the expenses during trial. He claimed deductions for the expenses in the posttrial brief but did not cite any evidence that would support them, and he implicitly abandoned that claim in his reply brief by ignoring respondent's answering brief on this point. <u>See</u> Rules 149(b), 151(e)(3); <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 187 n.6 (2001); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 n.19 (1988); <u>Vetrano v. Commissioner</u>, T.C. Memo. 2000-128.

The notice of deficiency included a $53,200 recapture adjustment in relation to the $56,000 claimed under section 179 in relation to the Hummer on petitioner's 2006 tax return. If in any year taxpayers' business use of property falls to 50% or less, deductions previously claimed under section 179 are subject to recapture under section 280F(b)(2) if "listed" property or under section 179(d)(10) if not "listed" property. <u>See</u> sec. 1.179-1(e), Income Tax Regs. The Hummer is listed property. <u>See</u> sec. 280F(d)(4)(A).

**[*9]**   At trial, petitioner presented business associates as witnesses to corroborate his business use of the Hummer and produced a purported log that he testified was prepared contemporaneously.  The testimony of the witnesses, including petitioner, was vague and inconsistent about which vehicles petitioner drove to the real estate office, which vehicles were used for business, and which vehicles were used for social and other personal purposes.

Petitioner testified that he "used [the Hummer] for advertising * * * [and] driving clients around once in a while" but also acknowledged that he used the Hummer and the other vehicles for personal purposes.  Antonio Fernandez, a loan officer in 2007 and a real estate associate of petitioner at the time of trial, testified that petitioner drove either the Hummer or a BMW when he brought prospective clients to the witness' loan office, "probably 50 percent of the time, 50-60 percent of the time he had the Hummer with him", and that was "maybe twice a week." Fernandez was not knowledgeable about petitioner's use of vehicles for personal purposes, including commuting between petitioner's home and office.  Diego Castillo testified that he saw petitioner use the Range Rover for business and "whatever car he wanted to use that day" for social purposes.  Zach Lilly, an associate in petitioner's real estate office, claimed that the Hummer was at the office "typically" or "pretty much all the time" when petitioner was there, but

[*10] petitioner expressly contradicted that statement. Lilly testified that only petitioner's wife drove the Range Rover, but petitioner testified that his wife was only his girlfriend in 2007. Finally, Lilly testified that petitioner sometimes drove Lilly home in the Hummer. Petitioner did not deny that statement.

The log was suspect because it was belatedly produced and because it was inconsistent with entries in a similar log for the BMW. The mileage shown on the log conflicted with petitioner's estimates at trial of the mileage that the Hummer was used for business, and there is no evidence from which we can determine the amount of petitioner's admitted personal use of the Hummer. To the extent that the Hummer was used for personal and commuting travel, attaching a removable sign to the vehicle does not qualify the personal use as business use. While it appears that petitioner sometimes used the Hummer to transport persons in relation to that business in years including 2007, we cannot conclude that there is reliable evidence that he used the vehicle more than 50% of the time for business. Petitioner has not satisfied the conditions to shift the burden of proof under section 7491(a)(2), and he has not proven that he was not subject to depreciation recapture for 2007 under sections 179(d)(10) and 280F(b)(2) because he failed adequately to substantiate use of the vehicle more than 50% for business during that year. His evidence on this issue is simply not reliable.

**[\*11]** After petitioner testified at trial, respondent sought to "conform the pleadings to the evidence" to disallow car and truck expenses and the section 179 deduction for the Range Rover because that vehicle was not used 100% for business. See Rule 41(b). According to petitioner and the IRS examiner, various issues, including those deductions, were negotiated and compromised during the audit, and 100% business use of the vehicles was clearly an issue. Disputing that at the time of trial was belated and prejudicial to petitioner. Even if an amendment to the answer were allowed, respondent would have the burden of proof. See Rule 142(a)(1). The evidence as to actual business use of each of the vehicles is inadequate to support a finding of the correct percentage of business use of any one of them. While the evidence shows that the correct percentage is less than 100%, it does not show whether it was more or less than 50%. We will not, therefore, allow the additional adjustment respondent claimed with respect to the Range Rover.

Villa's Mexican Grill

Petitioner deducted on his 2007 tax return $12,500, which was his investment in Villa's. The deduction was claimed as a section 179 expense. Diego Castillo testified that the purchase price for the restaurant included all of the equipment and the name, but there is no corroborating evidence describing the

[*12] equipment or indicating what other assets, such as food inventory, were included in the price. Moreover, Villa's was operated as and represented to be a corporation. Neither restaurant income nor expenses were reported on petitioner's return or on any corporate return until after the examination of petitioner's return was in process, and then conflicting claims about Villa's corporate status were made. At trial, petitioner, through his counsel, disavowed any claim for deduction of losses sustained by Villa's during 2007. Petitioner now claims that Villa's was a partnership for tax purposes.

Respondent contends that any deduction related to Villa, and particularly the claimed section 179 deduction, was corporate and, in any event, the claimed expense was not substantiated. We agree. Petitioner is not entitled to recharacterize the entity or deny its existence restrospectively to receive more favorable tax treatment. See Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193; see Verma v. Commissioner, T.C. Memo. 2001-132; Jeyapalan v. Commissioner, T.C. Memo. 2000-207. The degree of corporate purpose and activity requiring recognition of the corporation as a separate business entity is extremely low. Strong v. Commissioner, 66 T.C. 12, 24 (1976), aff'd without published opinion, 553 F.2d 94 (2d Cir. 1977). It appears that the

[*13] amount paid in relation to Villa's, if for equipment, was a corporate expense. Petitioner has failed to prove that he is entitled to deduct $12,500 under section 179.

Rental Expense Deduction

Respondent contends that petitioner has not substantiated the expenses related to the Stockton duplex or even that he had an ownership interest in the property. The expenses were disallowed in part because the examining agent concluded that the duplex was not available for rent in 2007, based in part on the claimed repairs expenses. There is no evidence explaining the condition of the property or any portion of it in 2007 or the nature of the repairs expense (or any of the other items claimed). No rent was reported, but Diego Castillo testified that part of the property was occupied for part of the year and $700 in rent was received. He estimated that the property was rented for three months, but because the only tendered corroboration is a receipt for $700 (not received in evidence) dated February 2, 2007, it is unclear whether the alleged three months was all in 2007 or partly in 2006. Petitioner's tax return preparer testified that he did not claim a depreciation deduction on petitioner's return for 2007 because he was uncertain (at the time the return was prepared in 2008) whether petitioner was going to hold or sell the properties. Because he did not report any rents or claim a

 **[*14]** depreciation deduction, we infer that the preparer was not told that the property was rented during 2007. Petitioner testified that the mortgage on the property was foreclosed in 2009. The expenses have not been substantiated by any proof of payment. The testimony is inadequate to establish that all of the duplex was available for rent during the year, and it is not possible to allocate the expenses, even if substantiated, to the portion that was available for rent or rented during the year. Thus petitioner has not satisfied his burden of proof, and the expenses cannot be allowed as a deduction.

Similarly, there is no reliable evidence that would support depreciation deductions related to the Stockton duplex and the Modesto property that were not claimed on the tax return but were raised at trial. Petitioner guessed as to the purchase price of each of the properties, stating as to each that it was "somewhere around" the amount he mentioned. The purported evidence of petitioner's purchase of the Modesto property was a closing statement for 2002 in the names of different buyers. There was no evidence supporting petitioner's purchase of the Modesto property in 2007, as he testified, or in 2006, as his tax return preparer assumed when he prepared a depreciation calculation shortly before trial. That calculation, which, among other problems, allocated to petitioner 100% of the depreciation for the Stockton property in which he held a 50% interest, was not

[*15] received in evidence. There is no reliable evidence of the cost basis of either property or the appropriate amount of depreciation, if any. See secs. 167, 168.

Section 6662 Penalty

Respondent has the burden of producing evidence that the section 6662(a) penalty applies. See sec. 7491(c). Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard.

Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A substantial understatement of income tax exists if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). The erroneous claims and omissions in this case and the failure to maintain adequate records are prima facie evidence of negligence. The stipulated

**[\*16]** omission of significant income and the resulting understatement in excess of 10% of the tax required to be shown on the return (and $5,000) satisfy respondent's burden of showing that the section 6662 penalty is appropriate, and petitioner must show that the penalty should not be imposed. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.

Reliance on professional advice may constitute reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991); sec. 1.6664-4(b)(1), Income Tax Regs. To justify reliance, the taxpayer must show that the professional adviser was supplied with accurate information. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

**[\*17]** Reasonable cause may more readily be found when the issues with respect to a taxpayer's liability are complex legal issues and is less likely where, as here, the issues are factual and not complex. See Carter v. Commissioner, T.C. Memo. 2010-111 (citing Metra Chem Corp. v. Commissioner, 88 T.C. 654 (1987)), in which the Court applied the predecessor to section 6662(a).

Petitioner has offered no reasonable explanation of the overstated basis relating to the Hummer, the failure to report rental income, or the now-conceded disallowed expense deductions. He simply asserts that he relied on his tax return preparer. Although he claims to have given a box of unidentified documents to the preparer, he did not provide all relevant information to his preparer, and he overlooked patent reporting errors on the face of the tax return. He failed to show a good-faith effort to determine his correct tax liability. See sec. 1.6664-4(b)(1), Income Tax Regs. He has failed to overcome the evidence of negligence justifying imposition of the accuracy-related penalty of section 6662, and he has not shown reasonable cause for the erroneous positions taken on the return.

**[\*18]** We have considered the other arguments of the parties. Many of them are unsupported by the record. They are not addressed because they do not affect our conclusions.

<u>Decision will be entered</u>

<u>under Rule 155</u>.