WILLIAM AND ANNA MAE WRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright
Docket No. 10340-90
United States Tax Court
T.C. Memo 1993-27; 1993 Tax Ct. Memo LEXIS 32; 65 T.C.M. (CCH) 1792; January 26, 1993, Filed *32 Decision will be entered under Rule 155. William Wright and Anna Mae Wright, pro se. For respondent: Cheryl McInroy. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$ 125,895
$ 6,295
50% of the
$ 31,474
interest due
on $ 125,895
1983
92,698
4,635
50% of the
23,175
interest due
on $ 92,698
1984
69,603
3,480
50% of the
17,401
interest due
on $ 69,603
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties which will be given effect in the Rule 155 computation, the issues for decision are: (1) Whether petitioners are entitled to a cost of goods sold in amounts greater than the amounts allowed by respondent for taxable years 1982, 1983, and 1984. We hold that they are. (2) Whether petitioners are entitled to business expense deductions *33 in addition to amounts allowed by respondent for trips to Jamaica in taxable years 1983 and 1984. We hold that they are. (3) Whether petitioners are liable for the negligence additions to tax and the substantial understatement addition to tax for taxable years 1982, 1983, and 1984. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Background
Petitioners resided in Haverhill, Massachusetts, at the time they filed the petition in this case. Petitioners are married and filed joint Federal income tax returns for the years at issue. During taxable years 1983, 1984, and 1985, petitioner William Wright was employed full-time as a professor at Northern Essex Community College in Haverhill, Massachusetts, and has a Ph.D. in education. Petitioner Anna Mae Wright was employed full-time as a social worker for the City of Haverhill, Massachusetts. Also during the years at issue, petitioners were engaged in the business of buying, selling, and promoting products for Amway Corporation (hereinafter Amway). Amway
Amway is a privately *34 owned company which sells household and personal products through a network of independent distributors. Amway distributors generate receipts by selling products directly to customers and by recruiting new distributors who become downline distributors of the sponsoring distributor. Each downline distributor, in turn, can sponsor additional new distributors all of whom become a part of the initial distributor's Amway organization which can grow to unlimited width and depth. Distributors receive bonuses from Amway based upon the volume of their entire sales organization which includes direct sales to customers and sales made by downline distributors. The distributor is also responsible for paying bonuses to downline distributors that he or she recruited into the business. Initially, new members recruited into the Amway organization purchase all Amway products from their immediate upline sponsor. When the sales volume of a new member reaches $ 7,500 a month for 3 consecutive months, the member becomes a direct distributor, purchases products directly from Amway or from lateral direct distributors, and receives a 25-percent yearend bonus. When a downline distributor places orders *35 with an upline distributor who, in turn, purchases the product from Amway, there is no markup. That is, the downline distributor will pay the same price for a product as the upline distributor pays to Amway. Markup only occurs when there are sales to customers outside the Amway organization. The goal is to maximize bonuses by recruiting your own downline distributors who successfully sell products and who recruit additional downline distributors. Petitioners' Amway Involvement
Petitioners have been involved with the Amway organization since 1974. In 1976, petitioners became direct distributors. At trial, petitioners stated that they were not in the business of selling to customers and instead primarily focused upon the continual expansion of their downline network. Petitioners further testified that they were in the Amway business for life and that Amway provides a nice income. The Amway business was operated from petitioners' basement. Petitioners always kept on hand an inventory of products and had an inventory at the beginning of 1982 and at the end of 1984, but did not keep records of the amounts of their inventory. As direct distributors, petitioners were responsible *36 for receiving and filling orders for Amway products from downline distributors whom they sponsored. Petitioners developed two methods by which to fill these orders. They either ordered these products from Amway directly, or they ordered from lateral direct distributors. Lateral direct distributors are those persons who are at the same level as petitioners, and who have a complete network under them. After petitioners received several product orders accompanied with money orders, cash, and personal checks, they deposited such into a bank account. They would then send a check to Amway and place their orders over the phone. On occasion, the personal checks that they received from their downline distributors were returned due to insufficient funds. As petitioners wrote checks to Amway relying on the checks that they received, some checks written to Amway were returned due to insufficient funds. When this occurs, Amway has a policy of placing all direct distributors on a cash or money order basis. When petitioners were placed on a cash only basis, they could no longer phone in their orders, and they had to order through the mail. This required petitioners to collect the funds *37 that accompanied the orders, deposit them into one of their bank accounts, write a check to cash, deposit the cash into another bank account from which petitioners would obtain a treasurer's check or a money order, and send the check or money order to Amway with their order form. The above-mentioned method took longer than ordering by phone; therefore, petitioners also ordered through lateral direct distributors who had not had any checks written to Amway return due to insufficient funds. In order to ensure that petitioners' checks to these lateral distributors were not returned due to insufficient funds, petitioners placed all checks, money orders, and cash into one of their bank accounts, wrote a check to cash, and then gave the lateral distributor cash, a money order, or a treasurer's check. The lateral distributor would, in turn, call in the orders for petitioners, and this sped up the process considerably. Petitioners conducted motivational seminars, held rallies to introduce people to Amway, hired speakers to lecture at these rallies and seminars, and sold admission tickets to these events. Petitoners also organized motivational trips to train and recruit people into the *38 business. Petitioners organized motivational trips to Jamaica with the assistance of Travel Vacations of Jamaica (hereinafter Jamaica Travel). Petitioners have explained that they had to pay Jamaica Travel in cash because that was the only way in which Jamaica Travel would do business. Petitioners' Reported Income
For taxable years 1982, 1983, and 1984, petitioners timely filed their Federal joint income tax returns and reported wages from their full-time employment in the amounts of $ 40,721, $ 42,174, and $ 42,744, respectively. Petitioners reported their Amway income and expenses on Schedule C as follows: Item
Year
1982
1983
1984
Schedule C
Gross Receipts
(from Amway 1099)
$ 68,079 $ 33,426 $ 46,656 Cost of Goods Sold
-0-   -0-  -0-   Schedule C
Expenses
(95,329)
(50,616)
(57,911)
Net Loss
(27,250)
(17,190)
(11,255)
For each year at issue, petitioners received Form 1099 from Amway indicating the amounts of their bonuses. The gross sales figure, from which the 25-percent bonus received by petitioners was allegedly derived, included products petitioners purchased for their own use. Karl Brandenburg, petitioners' accountant since 1984, *39 testified that he simply took this 25-percent bonus amount and multiplied it by 4, concluding that the result was the total bonus value of gross sales. Mr. Brandenburg used this figure to determine what the gross sales were for any given year and then attempted to match up order forms with some method of payment in an effort to substantiate the gross sales figure. Mr. Brandenburg also testified that the bonus value is not always equal to, and in many cases is higher than, the purchase price on the order forms. On their 1982, 1983, and 1984 returns, petitioners did not claim any amount for cost of goods sold for products purchased in connection with their Amway business. Petitioners now claim, however, that they are entitled to a cost of goods sold in varying amounts for each year at issue. Petitioners claim that they are entitled to a cost of goods sold in the amount of $ 131,680 for taxable year 1982. It is unclear from the record, however, how petitioners arrived at the above-mentioned amount. Petitioners have submitted as substantiation of payment for goods purchased checks to various individuals, treasurer's checks, checks to cash, checks to cash followed by the purchase *40 of a treasurer's check, and order forms. Petitioners claim that they are entitled to a cost of goods sold in the amount of $ 87,654 for taxable year 1983. It is unclear from the record, however, how petitioners arrived at the above-mentioned amount. Petitioners have submitted as substantiation of payment for goods purchased checks to various individuals, order forms without any form of payment, and checks written by Mary Wood, a distributor, made out to Amway drawn on Wood's bank account. For taxable year 1984, petitioners claim that they are entitled to a cost of goods sold in the amount of $ 59,426. It is unclear from the record, however, how petitioners arrived at the above-mentioned amount. Petitioners have submitted as substantiation of payment for goods purchased checks to various individuals, money orders, treasurer's checks, checks to cash followed by the purchase of a treasurer's check, order forms, and order forms associated with bank statements showing withdrawals on the same date and in the same amount as that of the order total. For their Amway activities, petitioners employed the shoe box method of recordkeeping wherein they collected copies of checks to other *41 people, checks to Amway, treasurer's checks, checks to cash, and order forms dated and undated which they placed into a shoe box. Petitioners have received training from Amway with regard to running the business, and Amway did make available a folder named "bookkeeping" which petitioners never used. During the taxable years at issue, petitioners kept no record of how much product was sold, how much was purchased for personal consumption, or how much made up their inventory. Many of the order forms submitted as substantiation of cost of goods sold do not identify, either by name or direct distributor number, who ordered the Amway products. Some of the order forms indicate that the products were ordered by individuals other than petitioners, some order forms are not Amway order forms, and some orders are lists of items on a piece of paper. Some of the order forms submitted cannot be associated with any checks to Amway, treasurer's checks, money orders, or any other method of payment. Petitioners did not claim deductions for trips to Jamaica on their 1983 or 1984 returns. Petitioners now claim that they are entitled to additional deductions for these Jamaica trips for 1983 and *42 1984; however, petitioners have made no indication as to what the deduction amounts should be. Respondent's Reconstruction of Petitioners' Income Using the Bank Deposits Method
Petitioners did not maintain books and records of their Amway activities during 1982, 1983, and 1984, in a manner acceptable for determination of their tax liability. Petitioners did not maintain separate checking or savings accounts for their Amway activities during these years. Respondent chose to reconstruct petitioners' income using the bank deposits method for each taxable year in issue as follows: Item
Year
1982
1983
1984
Total Bank
Deposits
$ 444,206  $ 312,502  $ 212,351  Less: Deposits
attributable to
nontaxable
sources [1]
(126,991) (98,960) (41,879) Less: Sources
of income per
return
(104,506)
(73,143)
(85,741)
Plus: Expenditures
of cash from
unidentified
sources
-0-   32,830 20,878 Unreported
Income
$ 212,709 $ 173,229 $ 105,609 *43 Petitioners are in agreement with the above-mentioned calculations but do not agree that there is an understatement of taxable income for 1982, 1983, or 1984. Respondent concedes in the stipulation that petitioners are entitled to a cost of goods sold in the amount of $ 70,506 for taxable year 1982. This amount consists of checks made payable to various individuals and checks to cash followed by the purchase of a treasurer's check on or near the same day. Respondent has not allowed as a cost of goods sold for 1982 any amount over an amount of a check drawn first to cash. Therefore, only a portion of some treasurer's checks has been allowed. In the notice of deficiency, respondent allowed a cost of goods sold in the amount of only $ 14,436 for 1983. Respondent now concedes that petitioners are entitled to a cost of goods sold for 1983 in the amount of $ 54,272 in addition to the amount allowed in the notice of deficiency. This amount consists of checks made payable to various individuals. Respondent concedes in the stipulation that petitioners are entitled to a cost of goods sold in the amount of $ 37,892 for taxable year 1984. This amount consists of checks made payable to *44 various individuals, checks to cash followed by the purchase of a treasurer's check, and order forms traced to withdrawals from various bank accounts. Petitioners maintained six bank accounts in 1982, five bank accounts in 1983, and five bank accounts in 1984. During taxable years 1982, 1983, and 1984, petitioners did not receive any gifts, inheritances, legacies, or devises. Respondent concedes that petitioners are entitled to certain rental expense deductions, interest expense deductions, and charitable contribution deductions. The parties agree in the stipulation that petitioners are entitled to Schedule C expenses for taxable years 1982, 1983, and 1984, in the reduced amounts of $ 71,414, $ 42,950, and $ 41,993, respectively. With respect to the Jamaica trips, respondent did not stipulate to all of petitioners' documentation. Petitioners have been allowed a deduction in the amount of $ 5,797.57 for taxable year 1983. OPINION Issue 1. Cost of Goods Sold
The first issue for decision is whether petitioners are entitled to a cost of goods sold in amounts greater than the amounts allowed by respondent for taxable years 1982, 1983, and 1984. Respondent's determinations *45 are presumed correct. Accordingly, petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Cost of goods sold is an offset to gross receipts in determining business income. Sec. 1.61-3(a), Income Tax Regs. Although cost of goods sold is not a deduction, and, therefore, not subject to the limitations on deductions contained in section 162, any amount allowed as a cost of goods sold must be substantiated. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). In the instant case, petitioners were engaged in buying, selling, and promoting products for Amway during the taxable years at issue. Petitioners did not maintain books and records in a manner acceptable for determination of tax liability. Respondent, therefore, chose to reconstruct petitioners' income using the bank deposits method. Respondent first determined petitioners' total bank deposits in each taxable year. These amounts were adjusted for redeposited checks, deposit corrections, deposits from prior and subsequent years, transfers between accounts, and the sources of income reported in each year. During taxable *46 years 1982, 1983, and 1984, petitioners did not receive any gifts, inheritances, legacies, or devises. Respondent, therefore, determined that all remaining unidentified deposits were additional gross receipts from petitioners' Amway business. Petitioners do not dispute the amounts of deposits into their bank accounts. Initially, petitioners reported a zero cost of goods sold on their returns for 1982, 1983, and 1984. After respondent determined that the gross receipts should be increased, petitioners alleged that their cost of goods sold should be increased in the same amounts. Respondent contends that she has stipulated to all amounts attributable to cost of goods sold that petitioners have been able to substantiate. According to respondent, order forms that could be reasonably traced to a money order or treasurer's check, that had some relation to a withdrawal in some form from petitioners' bank accounts, were accepted for substantiation purposes. Respondent did not, however, stipulate to all of petitioners' documentation as substantiation. With regard to the treasurer's checks and money orders, many cannot be associated with a check to cash or a withdrawal from any of petitioners' *47 bank accounts. Some treasurer's checks are made payable to individuals in an amount greater than a check first made out to cash; the excess was disallowed by respondent. Some treasurer's checks, money orders, and checks to cash were not made out in amounts equal to amounts due on any order form or series of order forms. Finally, with respect to the order forms allegedly used by petitioners, some indicate that the products were ordered by individuals other than petitioners, and some cannot be associated with a check, money order, treasurer's check, or any other method of payment which corresponds to any type of withdrawal from any of petitioners' bank accounts. Petitioners argue that they were in the business of selling to people within their Amway network, and that they were not in the business of selling to customers. Therefore, their cost of goods sold is always equal to their gross receipts because there is no markup within the network. Petitioners allege that they charged their downline distributors the same amount that they paid to Amway for products, and they merely acted as conduits through which funds were funnelled to Amway. Petitioners offer as substantiation of their *48 cost of goods sold checks written to various individuals, treasurer's checks, money orders, checks to cash, checks to cash followed by the purchase of a treasurer's check on or near the same day, and order forms. Petitioners' argument that this Court should accept a cost of goods sold in each year equal to the amount of petitioners' gross receipts is without merit. Petitioners offered no evidence aside from their own testimony that they sell only to other distributors and not to customers. In each year at issue, petitioners reported business expenses well in excess of their gross receipts including bonuses. At trial, petitioners stated that they planned to be in the business for life. Petitioners also stated that a nice income was derived from Amway, yet they reported net losses for all years at issue in this case. They simply advanced no reason why they would remain in a business which provided only losses unless the business was entered into or remained in for tax purposes only or unless petitioners have not reported their business income correctly. On brief, petitioners stated that they were audited in 1983 for their 1981 tax year. If in 1983 it became clear to petitioners *49 that their recordkeeping practices were less than adequate, it is then difficult to understand why they did not seek to improve them. At trial, petitioner Anna Mae Wright testified that she was always told to just throw everything into a shoe box, and as the business grew she never grew beyond the shoe box. Petitioners' business did grow in 1982 with gross receipts totaling over $ 200,000. It is simply not credible that any taxpayer would believe that keeping his or her business records in such a cursory and sloppy fashion is adequate for a business generating that amount of income. Further, petitioners dealt in large amounts of cash, cashed checks from other individuals without depositing them, and presented copies of money orders and treasurer's checks that could not be related back to withdrawals from their accounts. Petitioners offered no testimony as to the amounts of products sold to other distributors, the amounts used for personal consumption, how much they sold to customers, or how much made up their inventory. Petitioners also did not call as witnesses any of the other direct distributors with whom they dealt to corroborate their testimony. Mr. Brandenburg, petitioners' *50 accountant, testified that he used the 25-percent bonus figure from Amway to determine the amount of gross sales for the years at issue. There is no statement from Amway, however, to verify Mr. Brandenburg's interpretation of the bonus amount, and in many cases the bonus value on the order forms is greater than the purchase price. It is clear from the record that respondent made a lengthy review of the documents presented to her by petitioners in an effort to substantiate the claimed expenses and cost of goods sold and has allowed substantial business expenses deductions and cost of goods sold for each year at issue in this case. We find, however, that some personal checks written by petitioners do relate to order forms or a series of order forms. Therefore, we accept as substantiation personal checks written by petitioners to lateral distributors that correspond to an order form or series of order forms and that are made within a reasonable time of each other. We find the amounts allowable for cost of goods sold in taxable years 1982, 1983, and 1984, over and above what was stipulated to by respondent, to be $ 8,879.41, $ 4,469.84, and $ 7,131.40, respectively. A list of such *51 checks and order forms is enumerated by reference to their exhibit number in Appendix A to this opinion. Issue 2. Jamaica Trips
The second issue for our consideration is whether petitioners are entitled to additional business expense deductions for trips to Jamaica for taxable years 1983 and 1984. The goal for Amway distributors is to maximize bonuses by expanding their network through recruitment of new members. In an effort to motivate and recruit new people into the business, petitioners organized trips and seminars in conjunction with Jamaica Travel. Petitioners did not claim a deduction for any trip to Jamaica on their returns for 1983 or 1984. By way of stipulation, however, respondent has allowed a deduction in the amount of $ 5,797.57 for taxable year 1983. Respondent did not, however, accept all of petitioners' documentation with regard to these trips, and petitioners believe that they are entitled to deductions in addition to those allowed by respondent. Petitioners have presented, however, several money orders, treasurer's checks, and receipts for such. To the extent that the above-mentioned checks and money orders were able to be associated with a withdrawal *52 in any form from petitioners' accounts connected with Jamaica Travel, they are allowed. The additional allowable deductions are enumerated by reference to their exhibit number in Appendix B to this opinion. Issue 3. Additions To Tax
The third issue for consideration is whether petitioners are liable for the negligence additions to tax and the substantial understatement addition to tax for taxable years 1982, 1983, and 1984. Petitioners failed to present any evidence on this issue and therefore have failed to meet their burden of proof. Accordingly, we hold petitioners are fully liable for the additions to tax for taxable years 1982, 1983, and 1984, based on the understatements as determined after giving consideration to concessions made and this opinion. To reflect the foregoing, Decision will be entered under Rule 155.
Appendix A Substantiation Acceptable For Cost Of Goods Sold
1982
Substantiation
Amount
Exhibit 125-DU relates to order forms contained
in exhibits 126-DV through 128-DX
$ 2,067.83
Exhibit 160-FD relates to an order form contained
in exhibit 161-FE
1,000.00
Exhibits 162-FF and 170-FN relate to order forms
contained in exhibits 164-FH through 166-FJ
2,000.00
Exhibits 168-FL and 169-FM relate to order forms
contained in exhibits 171-FO through 174-FR
2,512.98
Exhibit 188-GF relates to order forms contained in
exhibits 189-GG and 190-GH
1,298.60
Total:
$ 8,879.41
1983
Exhibit 200-GR relates to order forms contained in
exhibits 201-GS through 203-GU
$ 2,375.07
Exhibit 227-HS relates to an order form contained
in exhibit 228-HT
445.14
Exhibit 24-X(8) relates to order forms contained in
exhibits 229-HU through 232-HX
1,649.63
Total:
$ 4,469.84
1984
Exhibit 195-GM relates to order forms contained in
exhibits 196-GN through 199-GQ
$ 1,244.65
Exhibit 29-AC(2) relates to a money order contained
in exhibit 233-HY that relates to an order form
contained in exhibit 234-HZ
326.48
Exhibit 243-II relates to a check contained in exhibit
29-AC(5) that relates to order forms contained in
exhibits 244-IJ and 245-IK
675.61
Exhibit 29-AC(5) relates to order forms contained in
exhibits 249-IO through 251-IQ
1,201.35
Exhibit 29-AC(6) relates to a distributor's invoice
contained in exhibit 253-IS
1,896.09
Exhibit 29-AC(6) relates to a money order contained
in exhibit 254-IT that relates to order forms
contained in exhibits 255-IU through 257-IW
1,787.22
Total:
$ 7,131.40
*53 Appendix B Substantiation Acceptable For Additional Deductions For Jamaica
Trips
Substantiation
Amount
1983
Exhibit 305-KS relates to exhibit 21-U(4)
$ 1,560.00
1984
Exhibit 298-KL relates to exhibit 29-AC(1)
$ 1,500.00
Footnotes
1. Respondent reduced petitioners' total bank deposits in each year for deposits which were attributable to nontaxable sources including credit memos for redeposited checks, deposit corrections, deposits attributable to another year, transfers between bank accounts, and deposited loan proceeds.↩