ROBERT AND LUCILLE FORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fors v. Commissioner
Docket No. 8904-92.
United States Tax Court
T.C. Memo 1995-392; 1995 Tax Ct. Memo LEXIS 392; 70 T.C.M. (CCH) 420; August 16, 1995, Filed *392 Decision will be entered under Rule 155. Robert Fors, pro se. John C. Schmittdiel, for respondent. SCOTT, Judge SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the calendar years 1985 and 1986 as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a)
1985
$ 10,681
$ 534.05
50% of interest
$ 2,670
on $ 10,681
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1986
1,540
$ 77
50% of interest
on $ 1,540
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues for decision are: (1) The amount of business expenses petitioners are entitled to deduct for each of the years here in issue, including the proper amount of deductions for travel and entertainment expenses, and (2) whether petitioners are liable for the additions to tax for negligence for each of the years here in issue and for substantial understatement of tax for the year 1986. FINDINGS OF FACT Petitioners, *393 husband and wife, resided in Rosemount, Minnesota, at the time of the filing of their petition in this case. Petitioners filed joint Federal income tax returns, Forms 1040, for the calendar years 1985 and 1986. On each of these returns wages were reported for Lucille H. Fors from the Indiana school district No. 196. During each of the taxable years 1985 and 1986, Robert C. Fors (petitioner) was self-employed. Attached to his return for each of the years 1985 and 1986 was a Schedule C, Profit or (Loss) From Business or Profession, which showed under name of proprietor "Robert C. Fors"; principal business or profession "real estate"; and business name and address "above and home". On the Schedule C for each year there were reported gross receipts under part I, and for each year the reported gross income was the same as the reported gross receipts, there being no subtraction from gross receipts in arriving at gross income. Under part II, petitioner claimed deductions for the year 1985 for advertising, service charges, car and truck expenses, commissions, depreciation, dues and publications, insurance, legal and professional services, office expense, interest, rent on business property, *394 supplies, travel and entertainment, utilities and telephone, wages, fees, and maps. For the year 1986, petitioner claimed deductions under all of these same categories, except there was no claimed deduction for fees and maps, but there was a claimed deduction for licenses, and also, in addition to a claimed deduction for other interest, there was a claimed deduction for mortgage interest. During the years here in issue petitioners owned four automobiles. There were four drivers in the family, two of them children. One of the automobiles, a 1984 Chevrolet Citation, was driven by petitioner primarily for business purposes. The parties disposed of some of the items which had been disallowed in the notice of deficiency by agreement. Respondent allowed amounts in addition to those allowed in the notice of deficiency, and, petitioner conceded certain amounts that had been claimed on his return. After the various concessions, there are left in dispute certain amounts in 1985 in the categories of: insurance, legal and professional expenses, utilities, fees and maps, car and truck expenses, and travel and entertainment expenses. And for the year 1986, amounts remain in dispute under the *395 categories of advertising, insurance, legal and professional expenses, utilities, depreciation, car and truck expenses, and travel and entertainment expenses. Included in the category of travel and entertainment expenses are amounts petitioner refers to as promotional expenses, which include club dues and tickets to athletic events. In the notice of deficiency most of the amounts disallowed by respondent were disallowed on the basis either that the amount had been allowed under a different category, or that the business purpose of the claimed deduction had not been shown. The disallowance with respect to the travel and entertainment expenses was on the basis that the substantiation necessary under section 274(d) had not been produced. OPINION Petitioner claims, with the exception of amounts he has conceded to have been improperly deducted, that the deductions claimed were proper business expenses, and were properly substantiated. Respondent takes the position that petitioner has not produced sufficient evidence to substantiate claimed deductions in amounts in addition to those allowed in the deficiency notice or conceded by respondent at the trial. Although respondent's brief goes *396 into a lengthy discussion of the burden of proof being on petitioner, and the requirements of section 274(d) as compared with the evidence of this case, in our view, the issues with respect to items other than the travel and entertainment expenses are primarily whether the evidence stipulated in the record, combined with the testimony petitioner gave at the trial, is sufficient to show that the deductions claimed by petitioner were proper. Except for the travel and entertainment expenses, petitioner's burden is merely to produce sufficient evidence to show that he is entitled to the deductions claimed. The parties stipulated into the record copies of numerous documents kept by petitioner or prepared by petitioner from records he had kept. One of the documents introduced was a reconstruction made by petitioner from various receipts he kept with respect to travel and entertainment expenses, after investigation of his return commenced. When the IRS agent came to investigate petitioner's return, petitioner produced for the agent numerous stacks of individual receipts, and the agent asked petitioner to make a schedule, suggesting the form of the schedule, showing under the various categories *397 the items that were covered by the receipts. Petitioner made such a schedule and initially retained all the receipts, but because he understood the agent to say that, since these receipts had been summarized, the individual receipts were worthless, he did not retain all of the minor receipts, particularly the ones showing payment of only a few dollars. However, petitioner clearly testified that, except with respect to travel and entertainment expenses where he did put in items under $ 25 for which he never had a receipt, the summaries all came from the original receipts. Petitioner stated that he understood that he did not have to keep a receipt for a travel or entertainment item of less than $ 25. For this reason, when he was preparing the schedule and had no receipt with respect to a breakfast, luncheon, or dinner, that according to his recollection in 1989 when he was preparing the schedule he had paid for when out of town, or had paid for in entertaining someone, he merely put in the amount of $ 24. He put in the amount of $ 24 whether, in fact, he thought the amount spent was more than $ 24 or merely $ 24. On our review of the schedule made in 1989, we conclude that this is an *398 appropriate business record made from original records, as to items other than the $ 24 items not supported by original records. It is a business record of the information the original receipts would show. For this reason, we accept petitioner's schedule as supporting the expenditures of the amounts set forth therein, other than the amounts which petitioner admitted were not truly from receipts, but were shown as $ 24. Therefore, in deciding whether petitioner has substantiated deductions in excess of those which respondent has allowed or conceded, we have considered the document petitioner prepared in 1989 to be an accurate record of petitioner's expenditures. In considering this record as support for travel and entertainment expenses, we have compared the information shown thereon with the standard necessary to establish a deduction for travel and entertainment expenses. We will, therefore, first consider expenses which do not require the measure of proof required under section 274(d). Under legal and professional expenses for 1985, petitioner showed a payment of $ 447 to Doug Chestnut. In some of the notations that were stipulated into the record, particularly the notations in *399 the exhibit which is entitled "weekly minder", which is a copy of a notebook petitioner apparently kept on a daily basis with respect to his activities, it appears clear that Doug Chestnut was a contractor with whom petitioner had business relations. On the basis of the information stipulated into the record, we conclude that petitioner, in addition to the legal and professional expenses deductions allowed or agreed to by respondent, is entitled to the $ 447 that was paid in 1985 to Doug Chestnut. The same is true with respect to the $ 82.48 paid in 1985 to W.M. Prout, who was the owner of a secretarial service used by petitioner. Notations that petitioner made are sufficient to come to this conclusion, and, therefore, we conclude that in addition to the amounts allowed by respondent, petitioner in 1985 is entitled under legal and professional fees to this $ 82.48 deduction. For the other amounts under legal and professional services which have not been agreed to by the parties, we have not been able to glean from the record their connection with petitioner's business and, therefore, conclude that petitioner has not offered sufficient evidence to show that these items are properly *400 deductible as business expenses. The only item that remains in controversy under the category of fees and map expenses in 1985 is an item of $ 285, which is evidenced by a receipt signed by Meg Carlson, and contains a notation "B'VILLE" and is dated February 21, 1985. From looking through the various references petitioner has with respect to his business activities, we conclude that Meg Carlson had a business relationship with petitioner, and that there is sufficient evidence to show that this $ 285 is a proper business expense deduction. We, therefore, conclude that in addition to the amounts which respondent allowed in the notice of deficiency or conceded as fee and map expenses in 1985, petitioner is entitled to deduct this $ 285. Because of the way the documents introduced into evidence were set forth, and the manner in which the parties conceded different items in the record, it is difficult to tell the amount that respondent has allowed to petitioner for parking. However, it appears that most of the parking, or much of it, was local and would not be subject to proof as a travel or entertainment expense. On his recap of expenses for 1985, petitioner showed, according to respondent's *401 count, 134 entries for parking expenses, the total expense being in the amount of $ 557.45. A review of petitioner's documentation leads us to the conclusion that this entire amount of parking expense has been substantiated as a business expense for the year 1985. To the extent the amount which respondent either allowed in the notice of deficiency or conceded at trial is less than $ 557.45, we conclude petitioner is entitled to the extra amount of the deduction for parking expense in 1985. Petitioner contends that the only amount allowed to him as a business expense deduction for telephone was the amount paid to Northwest Bell for his business telephone in his home office. He points out that on Exhibit 13-M there are substantial telephone expenses for use of a telephone when he was away from his home office business telephone. Because of the way the parties stipulated the allowed and disallowed amounts, it is difficult for the Court to determine whether telephone expenses of petitioner away from his home business office, which are shown as business expenses on Exhibit 13-M, have been allowed or the extent to which they have been allowed. It is not clear to the Court whether the home *402 business telephone is also shown as an expense on Exhibit 13-M. In any event, viewing the record as a whole, we conclude that the total amount of telephone expense shown for 1985 on Exhibit 13-M was a legitimate business expense of petitioner. This amount is properly allowable and, of course, should be reduced by the amount allowed by respondent for the business telephone expenses paid to Northwest Bell, if that is also included in the amounts on Exhibit 13-M, or any other amount of telephone expense conceded by respondent as deductible for 1985. If the amounts on Exhibit 13-M are in excess of the amount allowed petitioner, the excess should be allowed, and if the Northwest Bell telephone expense are not included on Exhibit 13-M, then the additional amount allowed is the entire amount of the additions of telephone expense on Exhibit 13-M, less amounts conceded by respondent. There is nothing in the record to substantiate petitioner's claimed deduction for insurance expense in addition to the $ 450 which respondent has either shown as allowed in the notice of deficiency or conceded at the trial. The $ 450 is for automobile insurance with respect to petitioner's business car. The total *403 amount petitioner paid was $ 500, and respondent allowed 90 percent of this as a business expense. We do not understand that petitioner is contesting the 90 percent use for business purpose of his business car in 1985. Also, there is nothing in the record to support more business use of the automobile than the 90 percent, and the amount allowed by respondent has been determined by prorating among the four cars total automobile expenses substantiated by petitioner and allowing 90 percent of the expenses prorated to petitioner's business car. Petitioner in 1985 has shown no error in the amount determined in this way, which is partially the amount allowed in the deficiency notice and partially an additional allowance. This brings us to the question of the extent to which petitioner has established his entitlement to deductions for travel and entertainment expenses in 1985, and if he has shown any amount deductible for that year in excess of the amount allowed by respondent. The entertainment expenses deducted by petitioner were referred to by him as promotions and gifts. The minor items on the list petitioner supplied, totaling $ 137, were allowed by respondent. None of the major claimed *404 deductions were allowed to any extent. The largest one deduction was an amount of $ 2,324 paid by petitioner for tickets to the North Stars hockey games. The next largest amount was the dues and other amounts petitioner paid to the N.W. Racquet Club. The other disallowed item that petitioner questions in his category of promotion and gifts is $ 75 paid to Craig Smith. We shall begin with the amount that is most obvious. The basis of disallowance shown on the documents to which the parties stipulated of the $ 75 paid to Craig Smith is that it was claimed under legal and professional expenses. From a review of all of the documents in the record showing references to signs and to Craig Smith in many of the notations made by petitioner in his weekly minder and other documents, we concluded that petitioner has substantiated that Craig Smith was paid $ 75 for the painting of a business sign for petitioner. In fact, there were a number of various signs for which petitioner paid in 1985. Therefore, petitioner is entitled to the deduction for the $ 75, either as an additional deduction under legal and professional expenses or a deduction under promotion, unless it has previously been allowed *405 as a deduction in the computation of the amount of allowed deductions under legal and professional expenses for 1985. The parties can determine whether the $ 75 paid to Craig Smith has been allowed to petitioner in 1985 in computation of the deduction allowable for legal and professional expenses. If it has been allowed as a legal and professional expense, petitioner is not entitled to a duplicate deduction under promotion. If it has not been allowed as a legal and professional expense deduction, the record clearly supports its allowance as a deduction under promotion. The payment to the racquet club is not well documented as to the business relationship of that club to petitioner's business activities. The record shows substantiation for the amount paid, but does not show sufficient information to entitle petitioner to a deduction for dues paid to the racquet club as a business expense. Section 274(a) specifically deals with the fact that no deduction otherwise allowable shall be allowed except under the conditions therein stated for an activity of the type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes a direct relationship *406 to, or in the case of an item directly preceding or following a substantial and bona fide business discussion, that such item was associated with the active conduct of the taxpayer's trade or business, or with respect to a facility used in connection with an activity related to entertainment, amusement, or recreation. Section 274(a)(2) specifically states that dues or fees to any social, athletic, or sporting club or organization, shall be treated as items with respect to facilities, and that in the case of a club, the taxpayer must establish that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business in order for the amount to be deductible. There is some slight indication in the record that petitioner at times did conduct business at the N.W. Racquet Club. However, there is clearly no evidence in the record to show that the primary use of this club was for business or the business relationship to any specific deduction claimed. Petitioner has failed to substantiate the deduction claimed for dues and other expenses connected with the N.W. Racquet Club. There is *407 much more information in the record in connection with the tickets to the North Stars hockey games purchased by petitioner than with respect to the N.W. Racquet Club. Exhibit 13-M shows under Thursday, January 10, 1985, a notation "hockey tickets $ 96", followed by a name, an illegible word, and "purchase building", and under Saturday the 12th, shows "hockey TX $ 96", followed by a name, and "promotion (illegible word) in NC". On January 16, there is the notation "hockey $ 96" with a name and "real estate listings on bldgs", and under date of Saturday, January 19, is a notation which is difficult to read, but does show "hockey $ 96 M/M Plationary AU 1 AU 2 purchase". The other notation is not readily legible. Under date of January 23 there is a notation "hockey TX $ 96" with two names and the notation "deal on cottage above". Under date of February 6 is a notation "hockey TX $ 96" with a name and a notation that says "promotion sell real estate in (the name being difficult to read, but appears to be) Bloomington", and under the date February 8 "$ 96 hockey tickets" with a name and notation "mortgage for strip in Minnesota". On February 20 is a notation "hockey tickets $ 96 M/M", with *408 a name and a notation (an illegible word) "in Arizona". February 22 shows "hockey tickets $ 96" with a name and the notation "K.C. sites 5 at DRS", with the balance illegible. Under Saturday, February 23, a notation shows "hockey $ 96" with a name and "K.C.--Milwaukee". There are four similar entries in March showing the name of the person entertained and the business discussed. In April there are two similar entries, in October there are four such entries, in November there are five such entries, and in December there are four such entries. These notations in petitioner's records were made from notes petitioner made at the time of the respective games. Petitioner's claimed deduction for entertaining prospective clients or other business associates at hockey games was $ 2,324 in 1985, and this amount is supported by the records discussed above. Considering the evidence as a whole, the notations in the document petitioner made from contemporaneous records at the revenue agent's request to support his claimed deductions and names and notations appearing in other documents in the record, we conclude that petitioner has substantiated the claimed promotional expense deduction of $ 2,324 *409 for hockey game tickets in 1985 and, therefore, hold that petitioner is entitled to this deduction of $ 2,324 as a claimed entertainment or promotional expense, in addition to the $ 137 allowed by respondent. We have reviewed all the documents petitioner offered to support his travel expenses. As we have stated above, section 274(d) provides that no deduction for travel expenses, including meals and lodging, shall be allowed under sections 162 or 212 unless the taxpayer substantiates by adequate records or sufficient evidence corroborating his testimony, his entitlement to such deduction. The documents in evidence, including Exhibit 13-M, are insufficient to support traveling expense deductions in excess of the amounts allowed or conceded by respondent, except with respect to the amounts conceded by respondent for the trips petitioner made to Arizona and Minnesota. Respondent has recognized that these trips were business trips for petitioner, and that petitioner expended the amounts he stated he expended for himself and his family on these trips. The difficulty is that since petitioner took his family with him an allocation must be made to the part of the expense which was for petitioner *410 himself, as distinguished from the expenses for petitioner's wife and children. On the trip to Arizona, the family stayed at the Wigwam. The statement shows "Mr. and Mrs. Robert Fors plus one." Over to the side appears "411/12". However, on the bill itself under room is "411-1". As petitioner testified, children are not charged at the same rate as adults. He further testified that the children were in an adjoining room and that they were age 11 and under. Sometimes hotels charge extra for an extra person in the room, and sometimes they charge the same rate whether the room is occupied by one person or more than one person. Some hotels make no room charge for children. This creates a difficulty in determining the amount that should be allocated to petitioner. Petitioner's estimate was 75 percent. However, he had no basis for this estimate, since he testified that he did not know the portion that was allocable to him, except that he knew the children were not charged for at an adult rate. Respondent allowed petitioner one-fifth of the amount expended. Considering the evidence as a whole, and in view of the fact that the total expenditures for the family are well substantiated and the *411 trip was for petitioner's business with the family merely coming along, we conclude that the evidence supports an allocation to petitioner of one-half of the cost of the trip with the other one-half being a personal expense of petitioner's wife and children. We, therefore, increase the allowance for travel by petitioner in 1985 by increasing the amount expended at the Wigwam in Arizona from one-fifth of the total expenditure to one-half of the total expended. Respondent recognized that petitioner's trip in August 1985 to Pine Heath Lodge and Conference Center in Brainerd, Minnesota, was a business trip and allowed petitioner one-fifth of the total cost. However, the bill itself shows that there were different prices for petitioner and for his children. The bill shows two adults at $ 344.75 a person, two adults at $ 281.75 a person, which, since petitioner stated it was his family, were his children who were over 16 years of age, and one child at $ 422.63, with a notation "single occupancy", and there is a further notation "children under 4 at 14 and 16, plus age". This bill itself shows there is a difference in price based on children as compared to adults. What it does not show *412 is the amount petitioner would have paid only for himself. Under room there is a notation "room 118-12". However, it is reasonable to assume that petitioner, as an adult on a single occupancy basis, would have certainly paid more for a single occupancy than a child. Also, the total amount of the bill of $ 2,173.60 shows that the rates listed above were not daily rates, but rates for more than one day. There is a mark on the bill by modified American plan, as well as a mark by European (housekeeping). Therefore, there were meals in addition to the per person rate for the 7 days. Based on an analysis of the bill from Pine Heath Lodge and Conference Center for occupancy by petitioner and his family in August 1985, and petitioner's testimony that the cost for children was less than for the adults, we conclude that petitioner's portion of this bill should properly be $ 900, instead of the $ 435 allowed by respondent. Therefore, petitioner is entitled to an additional deduction for the business trip to Minnesota in 1985 of $ 465. We have analyzed Exhibit 13-M and the other information in the record in an effort to determine whether there were other properly documented expenses shown by *413 petitioner that had not been allowed or conceded by respondent in connection with travel, and we conclude that these other expenses are not sufficiently documented to meet the requirements of section 274(d). The meals shown at $ 24 were definitely estimates. Although, undoubtedly, petitioner did spend some amounts on some of these days for meals in either a travel status or in entertaining a client, this estimate of $ 24 is not proper documentation. We believe we have now discussed all the items connected with the year 1985. Under advertising on Schedule C for 1986, petitioner claimed a deduction in the amount of $ 7,508. At the trial petitioner claimed that a number of items that he referred to as promotional and other expenses were included in advertising expenses. These included a claimed payment to the N.W. Racquet Club of $ 1,622.35, payment to the Minneapolis Star of $ 95, gifts of $ 420.50, payment to the Minnesota Star of $ 385, for expenditures not in log $ 942, and tickets to the Minnesota North Stars hockey games of $ 2,650, making total expenditures of $ 6,114.85. Respondent in the notice of deficiency allowed petitioner for the year 1986 advertising expenses of $ 1,642, *414 and respondent made no concessions in this regard at the trial. The record does not show exactly what items respondent allowed in the statutory notice of deficiency as advertising expenses. However, since it is clear that the N.W. Racquet Club expenses were not allowed, and apparently the Minnesota North Stars hockey ticket payments were not allowed as deductions, we assume that the other deductions listed above as Minneapolis Star gifts and Minnesota Star were allowed, and part of the expenditures not in the log was allowed. In any event, there is nothing in the record to show the nature of these expenses. We will, therefore, only discuss the amounts claimed as deductions under N.W. Racquet Club and Minnesota North Stars. For the reasons we gave with respect to 1985, we conclude that petitioner has failed to establish that he is entitled to a deduction for promotional expenses, or any other category of expense deduction for payments made in 1986 to the N.W. Racquet Club. There is nothing in the recap of the receipts done in 1989 by petitioner to explain any usage of hockey tickets in 1986 similar to the notations for 1985. There is only one notation with respect to hockey tickets *415 in the 1986 expense record and that notation does not show the amount or any other necessary information. We, therefore, conclude that petitioner is entitled to no amount of deduction for advertising or promotional expenses in 1986 in addition to that allowed by respondent. The next item in 1986 is insurance. The parties agree that in 1986 petitioner paid $ 500 for insurance on his business car. However, respondent allowed a deduction of only $ 312.50, since instead of allowing 90 percent business use to petitioner of his business car in 1986, respondent allowed only 62-1/2 percent business use. Respondent on brief argued that the lower percentage rate is justified since she made some allowance for a rental expense in 1986 which she assumed was for an office away from petitioner's home office, and that petitioner had assumed commuting mileage for 216 days a year of approximately 20 miles a day. There is absolutely nothing in the record to support these assumptions on the part of respondent. The record shows that petitioner's office was in his home in 1986, just as it was in 1985. Although there is a presumption of correctness attaching to a determination made in a notice of deficiency, *416 once there is evidence to show error in that presumption it vanishes. The evidence shows petitioner's office was in his home in 1986. Petitioner testified that he used his business car over 90 percent of the time in 1986 for business, and respondent's counsel asked no questions of petitioner in this regard. On the basis of this record, we conclude that petitioner is entitled to deduct expenses of 90 percent based on business use of the Chevrolet Citation in 1986, and, therefore, is entitled to deduct an amount of $ 450 for cost of the insurance on the business car. Although we have not actually reached the automobile and truck expenses, we state here that 90 percent should also be applied to the other deductible amounts shown as applicable to petitioner's business car and the business expense deductions of petitioner increased accordingly. The only amount in dispute with respect to legal and professional expense in 1986 is $ 300 paid to Mr. Douglas Chestnut. For the same reasons we stated with respect to 1985, we consider the record sufficient to show that Mr. Chestnut was a contractor with whom petitioner did business and to support as a business expense deduction the admitted $ *417 300 petitioner paid to him in 1986. The next item in dispute for 1986 is utilities. Petitioner has made no showing of expenses for utilities in excess of the amount allowed by respondent. Petitioner's only objection to the amount respondent allowed or conceded as a business expense deduction for depreciation is that respondent did not allow 90 percent of the depreciation on his automobile as a business expense deduction. As stated above, we agree with petitioner that he is entitled to deduct all properly deductible items with respect to his business automobile to the extent of 90 percent thereof, and, therefore, we hold he is entitled to an increased depreciation deduction with respect to his business automobile. Petitioner contends that he is entitled to deduct telephone expenses in addition to the cost of the business telephone in his home office. Apparently petitioner placed the deduction under travel and entertainment expenses, rather than under utility expenses. The recap of petitioner's expenses, which is Exhibit 21-U in evidence, according to petitioner, shows total entries for telephone expenses, some of which were while he was in his home area and others while he was on *418 trips, of $ 1,066. A review of petitioner's records convinces us that he has established telephone expenses in the amount shown on Exhibit 21-U and, therefore, to the extent these expenses have not been allowed under utility expenses, we hold petitioner is entitled to deduct the amount of the total telephone expenses shown on Exhibit 21-U as business expenses for 1986. Petitioner also claims parking expenditures in excess of those allowed by respondent. Petitioner states that his recap of 1986 expenses shows total parking expenses of $ 993.40. For the same reasons we stated with respect to 1985, we conclude that petitioner is entitled to deduct all parking expenses shown on the 1986 "recap". Therefore, his business expense deduction should be increased by the amount that this $ 993.40 exceeds the amount respondent allowed petitioner as parking expenses under whatever category they were allowed. The final item of business expense deduction claimed relates to travel and entertainment. Respondent in the notice of deficiency and by concession at trial allowed petitioner travel and entertainment expenses of $ 1,205. A review of the record in this case shows that the only item for which *419 petitioner has adequate substantiation under section 274(a) as travel and entertainment expense that was not allowed by respondent, is an amount of $ 2,004.07 paid for a 7-day period in July that he and his family stayed at Pine Heath Lodge and Conference Center in Brainerd, Minnesota. Petitioner's testimony, supported by other information in the record, is that he was at the Pine Heath Lodge and Conference Center in connection with attempting to sell child care operations of Kindercare at a number of locations near Brainerd, Minnesota, as well as to transact other business in surrounding areas. There is documentation for the expenditure, and we conclude that petitioner has documented that he is entitled to a deduction for this trip. Again, the question arises as to the amount of the deduction. The bill in 1986 is comparable to the one in 1985, except that it indicates petitioner had a 3-bedroom hillside cottage, and that two meals a day were included with daily maid service. However, this bill shows four adults, two at $ 377.75 each, two at $ 290.75 each, and one 11-year old child at $ 435.75. Again, it is difficult to say what the single rate for petitioner would have been. Also, *420 there are some items that would not be business expense deductions under any circumstances, unless more showing was made, such as a boat rental. However, the total bill comes to $ 2,004.07. Again, considering all the evidence in the record, we conclude that petitioner is entitled to an additional travel expense deduction for business travel for the trip to Pine Heath Lodge and Conference Center in 1986 of $ 900. This is based on the portion of the costs we consider to be allocated to petitioner. At the trial petitioner did not raise the disallowance of a part of his deductions for contributions for the year 1986. He does raise this item on brief. The record shows that respondent did disallow part of petitioner's claimed personal deductions, and that part of this disallowance was $ 942 of contributions. Petitioner had claimed contributions of $ 1,604. Petitioner states that the record supports that he made contributions of $ 20 a week. However, he does not point to the specific document in the evidence that shows this, and we are unable to locate any such evidence. Therefore, we sustain respondent's disallowance of deductions for contributions in excess of the amount allowed in the *421 notice of deficiency. Respondent also disallowed certain medical expense deductions claimed by petitioner purely on the basis of the increase in income. Therefore, when a recomputation is made under Rule 155, there may be additional medical expense deductions allowable to petitioner in each year here in issue. Since this is purely a mechanical computation, we need not further comment on it. Petitioner contends that he is not liable for the additions to tax for negligence or for substantial understatement of income tax for the year 1985, and is not liable for the additions to tax for negligence for 1986. Petitioner presented no evidence to show error in respondent's determination of the additions to tax for negligence for either the year 1985 or 1986. The burden is on petitioner to show error in respondent's determination of an addition to tax for negligence. Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Petitioner's argument is that since a return preparer prepared his return he cannot be liable for negligence. The record does show the signature of a return *422 preparer on each of petitioner's returns. However, petitioner has made no showing of the basis on which the return preparer prepared his return or what information he gave to the return preparer for use in preparing his return. While under certain circumstances reliance by a taxpayer on the advice of an attorney or an accountant in connection with a complicated tax matter is sufficient to show lack of negligence, the mere fact that a preparer prepared a return is not sufficient to show a lack of negligence on the part of a taxpayer. Metra Chem Corp. v. Commissioner, supra.Here, clearly, the facts do show that petitioner was negligent in that he carelessly took deductions for certain items under two different categories, and did not keep a true set of books in connection with his business operation. We, therefore, sustain respondent's determination of additions to tax under section 6653(a)(1) and (2) for the year 1985, and section 6653(a)(1)(A) and (B) for 1986. Petitioner has made no showing of error on the part of respondent in connection with the determination of an addition to tax for substantial understatement under section 6661(a) for the year *423 1985. [1]Section 6661(a) as applicable to 1985 provides for an addition to tax of an amount equal to 10 percent of the amount of the underpayment. Section 6661(b)(1) defines substantial understatement to be an understatement of tax for the taxable year that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Therefore, if after a recomputation of petitioners' tax for the year 1985 there has been an understatement of tax for that year greater than $ 5,000, petitioner is liable for the addition to tax determined by respondent under section 6661(a). Decision will be entered under Rule 155. Footnotes
1. We are unable to understand respondent's computation of the amount of the addition to tax under section 6661(a)↩. However, it will be necessary, in any event, to recompute the addition under Rule 155.